Vincent P. Slusher
State Bar No. 00785480
vince.slusher@dlapiper.com
J. Seth Moore
State Bar No. 24027522
seth.moore@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

PROPOSED COUNSEL FOR DEBTOR AND
DEBTOR-IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In Re: | § | Chapter No.: 11 |
| | § | |
| **Angaraka Limited Partnership** | § | Case No.: 10-33868-sgj11 |
| | § | |
| Debtor. | § | |

## MOTION OF THE DEBTOR FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL AND GRANTING RELATED RELIEF

The above-captioned debtor and debtor in possession (the "Debtor") hereby moves (the "Motion") the Court pursuant to §§ 105(a), 361, 362, and 363(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of interim and final orders authorizing the Debtor to use cash collateral on the terms and conditions contained therein and granting adequate protection with respect thereto. The Debtor also requests that the Court schedule a hearing to approve the relief requested herein on a final basis (the "Final Hearing") and grant certain related relief. In support of this motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding pursuant to 28 U.S.C § 157(b).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory basis for the relief requested herein is §§ 105(a), 361, 362, and 363(c) of the Bankruptcy Code and Rule 4001 of the Bankruptcy Rules.

## INTRODUCTORY STATEMENT

5. On May 31, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6. Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its properties, affairs and assets as debtor-in-possession.

7. No trustee, examiner or committee of creditors has been appointed in this case.

8. Absent the use of cash collateral, the Debtor, its estate and its creditors will suffer immediate and irreparable harm. In contrast, the entities possessing security interests in the Debtor's property, assets and proceeds, are adequately protected and, as a result, will not be prejudiced in any way by the Debtor's use of cash collateral. Given these circumstances, the Court should authorize the use of cash collateral on the terms and conditions set forth herein.

## COMPANY BACKGROUND AND EVENTS LEADING TO CHAPTER 11 FILING

9. In November 2005, the Debtor, a Texas limited partnership, acquired and assumed indebtedness secured by, among other things, a Deed of Trust on four, Class B/C, garden-apartment properties (the "Properties") located in the Dallas/Fort-Worth Metroplex. The Properties -- Woodchase, Clarendon, Keller Oaks, and Sycamore Hills -- total 750 units and

range in date of construction from 1979 to 1983. Illustrated below is a summary of each Property's key characteristics:

|  | **Sycamore Hill** | **Keller Oaks** | **Clarendon** | **Woodchase** |
|---|---|---|---|---|
| **Location** | Fort Worth, TX | Carrollton, TX | Irving, TX | Irving, TX |
| **Number Of Units** | 264 | 220 | 192 | 74 |
| **Year of Construction** | 1983 | 1979 | 1981 | 1983 |
| **Current Occupancy** | 95% | 88% | 74% | 94% |

10. When the debtor acquired the Properties, they were encumbered with a loan in the original amount of $20,350,000. As of January 11, 2010 the loan balance totaled $17,690,484. Illustrated below is a Property by Property break down of the loan structure[1]:

|  | **Sycamore Hill** | **Keller Oaks** | **Clarendon** | **Woodchase** |
|---|---|---|---|---|
| **Original Loan Amount** | $6,210,476 | $7,167,501 | $4,561,137 | $2,410,887 |
| **Amortization** | 360 / Balloon | 360 / Balloon | 360 / Balloon | 360 / Balloon |
| **Current Interest Rate**[2] | 8.90% | 8.90% | 8.90% | 8.90% |
| **Maturity** | 11/01/2028 | 11/01/2028 | 11/01/2028 | 11/01/2028 |
| **Current Loan Balance** | $5,265,059 | $6,076,397 | $3,866,799 | $2,043,879 |

11. In or around January of 2009, Buchanan Street Partners took over as Asset Manager for all of the Properties and employed Pacific West Property Management ("PWM") to serve as "on-site" Property Manager at each Property. Upon engagement, PWM completed an in-depth review of each Property. In the course of their review of the Properties, PWM discovered several problems with the Properties, including aesthetic and structural elements that had dilapidated to the point of failing to satisfy required building codes, and a lack of any rentable units due to delayed repairs or general neglect. Since January 2009, Debtor, along with their new property manager PWM, have sought to upgrade the Properties, focusing on the most

---

[1] The allocations made hereunder are for illustrative purposes only and the Secured Creditor (defined herein) may not necessarily agree with the allocations or that the loan documents that define the relationship between the Debtor and the Secured Creditor require a release of the Secured Creditor's lien on any one property in return for payment of the amount listed by the Debtor in this chart.

[2] The Anticipated Repayment Date ("ARD") became effective November 1, 2008, triggering a 200 bps increase from 6.90% to 8.90% in the loan's effective interest rate.

pertinent items that required attention based on PWM's findings, particularly those mandatory to satisfy city code compliance issues and cure the life-safety items, as well as rehab the assets to be in revenue-generating condition.

12. At the same time, PWM also identified and sought to remedy several issues with the business management of the Properties. Specifically, PWM discovered that there was limited, if any, monitoring of account payables, the on-site management/support staff was poorly trained and required replacement, there were excessive and often unwarranted concessions being given to new tenants, and there was little to no marketing or advertising materials or activity promoting the Properties.

13. During 2009, the Debtor, with the help of PWM, had made significant progress with regards to completing some of the much needed repairs, renovations, and management reorganization of the Properties. Many of the completed repairs and renovations were required in order to satisfy city code compliance requirements and to meet basic standards of aesthetics. The Properties further risked being condemned by the city and becoming less marketable in attracting new tenants and retaining existing ones, and thus the need to complete them quickly was imperative. However the drain on cash-flow that such efforts had required compounded the Debtor's hardship in meeting its debt service requirements. Moreover, the market for older multifamily rental units, such as the Properties, in the areas in which the Properties are located saw a significant decline in 2009 as new units were built, exacerbating the Debtor's financial situation as tenants were more difficult to come by.

14. The costs of the repairs and renovations, the economic conditions, and the required debt service payments in 2009 had a significant impact on the Debtor's net operating income. Due to the increased financial burden of the Debtor brought upon it by the necessary

repairs and management changes, and the negative economic conditions, the Debtor began defaulting on its secured debt obligations. Despite Debtor's best efforts to renegotiate its obligations with its Secured Creditor[3], Debtor was unable to reach terms with the Secured Creditor that would allow it to operate as a profitable enterprise. Debtor therefore had no other option than to file for bankruptcy protection on the Petition Date.

## THE DEBTOR'S IMMEDIATE AND URGENT NEED FOR CASH COLLATERAL

15. In the ordinary course of business, the Debtor requires cash on hand and cash flow from its operations to fund its working capital and liquidity needs. As of the Petition Date, the Secured Creditor asserts that the Debtor is indebted to it in the approximate amount of $17,000,000.00 and that the Secured Creditor has valid, perfected liens and security interests in Debtor's real and personal property and all rents and proceeds, including a first priority security interest in the Debtor's rents and proceeds.[4] Thus, all of the Debtor's cash and cash proceeds are encumbered by a security interest in favor of the Secured Creditor and, as such, constitute "cash collateral" of the Secured Creditor (as such term is defined in Section 363(a) of the Bankruptcy Code, "Cash Collateral").

16. The Debtor has an immediate and urgent need to use Cash Collateral. Absent the use of Cash Collateral, the Debtor cannot continue its business operations, and its ability to

---

[3] The Debtor's Secured Creditor is Bank of America, National Association, successor to Norwest Bank Minnesota, National Association, as Trustee and REMIC Administrator for the Registered Certificate holders of DLJ Commercial Mortgage Corp, Commercial Mortgage Pass-Through Certificates, Series 1999-CGI, acting by and through C-III Asset Management LLC (f/k/a Centerline Servicing LLC, which was f/k/a Centerline Servicing Inc., which was f/k/a ARCap Servicing, Inc., in its capacity as special servicer pursuant to that certain Pooling and Servicing Agreement dated March 1, 1999) (or "C-III Asset Management")

[4] The Secured Creditor has indicated that it reserves it rights regarding whether the rents generated by the Properties are property of the debtors at all, as the Secured Creditor has indicated that it reserves it rights to take the position that such rents are the Secured Creditor's property under an absolute assignment of Rents. Without taking a position in this issue, for the purposes of this Motion and any Agreed Orders entered related hereto, the use of the phrase "cash collateral," "replacement lien," and such similar phrases when referring to the Secured Creditor's rights in the rents and other money generated by the Properties shall not constitute an admission by any party or a finding by the Court in an Agreed Order to that effect that such money is collateral and therefore property of the estate.

5

maximize the value of its estate will be jeopardized. By preventing the Debtor from using Cash Collateral to continue its business operations, it will not be able to make necessary repairs and maintenance on the Properties, or otherwise serve the current and future tenants of the Properties. This will jeopardize the Debtor's ability to keep the Properties occupied, which are the Debtor's only source of revenue.

17. The Debtor has requested that the Secured Creditor consent to the Debtor's use of Cash Collateral. As of the date of this Motion, however, the Debtor and the Secured Creditor have not reached an agreement on the terms of final or interim consensual orders for the use of Cash Collateral.

18. The Secured Creditor has also indicated that, at a final hearing, it may ask for the some or all of the following types of relief listed at the end of this paragraph be granted in its favor as part of the terms of adequate protection that the Debtor can extend to it. The Secured Creditor has further indicated however, that, even if all of the following types of relief are offered to it by the Debtor, and approved by the Court in a final cash collateral order, that the Secured Creditor's interests are adequately protected as that term is used in the Bankruptcy Code.

    a. finding by the Court that the Secured Creditor has a valid allowed claim which is secured by virtue of its pre-petition lien on all the Debtor's assets;

    b. the debtor may not challenge the Secured Creditor's line and that any other party-in-interest with standing to bring such a claim must do so within 30 days after the meeting of creditors or the filing of the Secured Creditor's proof of claim, which is later;

    c. any diminution of value claim generated by the Debtor's use of cash collateral be an allowed super-priority claim superior to all other claims in the case;

    d. a post-petition lien on all the assets of the Debtors to the extent that cash collateral is used;

    e. the granting of the post-petition lien to extend to all property of the debtor including causes of action available to it under Chapter 5 of the Bankruptcy Code;

    f. payment of substantially all cash flow in excess of budgeted for items authorized by the cash collateral budget that shall be applied to the outstanding indebtedness of the Debtor to the Secured Creditor;

    g. continued insurance in place and requirement that proof of insurance shall pe provided to the Secured Creditor on a go forward basis;

    h. escrowing in dedicated accounts the amounts required to pay for insurance and real and personal property taxes;

    i. Stringent reporting requirements from the Debtor to the Secured Creditor and the ability of the Secured Creditor to audit the compliance with the terms of the cash collateral order and budget;

    j. an expedited and streamlined procedure for the Secured Creditor to get its fees approved in the event of a sale or plan conformation via submission of invoices to the Debtor, the US Trustee and, if a committee of unsecured creditors is appointed, the Committee and, automatic allowance of those fees after submission except to the extent a written objection os filed as to some or all of the fee and expenses incurred;

    k. deadlines on when either a sale of all the Debtor's assets or plan confirmation must occur;

    l. the automatic lifting of the stay for the Secured Creditor in the event of a default with payment or default by the Debtor in compliance with the terms of the cash collateral order. Notice shall be given on the first two instances of default and the debtor shall be given an opportunity to cure said default, but the termination of the automatic stay shall be triggered automatically in the third instance of default.

## **RELIEF REQUESTED**

19. By this Motion, the Debtor seeks entry of interim and final orders, pursuant to §§105(a), 361, 362, and 363 of the Bankruptcy Code, (i) authorizing the Debtor to use Cash Collateral, (ii) approving the form of adequate protection provided to the Secured Creditor, and (iii) scheduling a final hearing.

20. The Debtor has submitted herewith a proposed interim order granting the relief requested herein (the "Interim Order"). Attached to the Interim Order is a detailed operating budget (the "Budget"). Certain of the terms of the Interim Order are summarized below:

7

| Term | Brief Summary |
|---|---|
| **Use of Cash Collateral** | The Debtor is authorized to use Cash Collateral upon the terms and conditions set forth in this Interim Order and in accordance with the Budget from the Petition Date through and including the date of conclusion of the final hearing on the Motion. |
| **Adequate Protection** | On an interim basis, the Secured Creditor are entitled to adequate protection of their interest in the Cash Collateral and other security granted to the Secured Creditor under the loan documents and security agreements. The Debtor shall provide the Secured Creditor with a first priority replacement lien on all the Debtor's assets, to the extent cash collateral is used by the Debtor that has a valid lien on it in favor of the Secured Creditor.<br><br>On a final basis, the Debtor and the Secured Creditor are still negotiating terms, but it is anticipated that some or all of the adequate protections requested by the Secured Creditor and listed in paragraph 18 will be agreed to as the adequate protection package, with the Secured Creditor reserving all right to argue that despite the protection package agreed to that such protection package is not "adequate protection" as that term is defined by the Bankruptcy Code. |

21. The foregoing is only a brief summary. The terms of the Debtor's use of Cash Collateral are set forth in detail in the attached Interim Order. **In the event of any inconsistency between the above summary and the Interim Order, the terms of the Interim Order shall control. Interested parties should review the Interim Order for a complete and accurate understanding.**

22. The relief requested herein is in the best interests of the Debtor, its estate and its creditors. Absent such relief, the Debtor will experience immediate and irreparable harm and its reorganization efforts will be jeopardized.

*The Secured Creditor Will be Adequately Protected*

23. The Secured Creditor are entitled to adequate protection against any diminution in value of the Cash Collateral pursuant to §§ 361 and 363(3) of the Bankruptcy Code. As

discussed below, the Debtor believes that the Secured Creditor will be adequately protected based upon its being granted a replacement lien, first in priority, on all the Debtor's assets to the extent that cash collateral is used and the Secured Creditor had a valid, pre-petition lien on it.

24. Section 363(e) of the Bankruptcy Code provides, in pertinent part, that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. . . ." Section 363(c)(2) contemplates that the Court may authorize the Debtor to use the Cash Collateral with or without the consent of the secured parties with an interest therein. See 11 U.S.C. §363(c)(2)(B). In considering whether to authorize use of cash collateral, however, a court must find that the interests of the holder of the secured claim is adequately protected. 11 U.S.C. § 363(e). The principal purpose of adequate protection is to safeguard the interests of the secured creditor in the particular collateral against diminution in the value of such collateral. See In re Continental Airlines, Inc., 154 B.R. 176, 180 (Bankr. D. Del. 1993) (noting that all forms of adequate protection are designed to protect secured creditors from diminution in the value of their collateral). As noted above, courts may require adequate protection in circumstances where the secured creditor does not consent. See, e.g., In re Westport Sandpiper Assocs., 116 B.R. 355, 357 (Bankr. D. Conn. 1990).

25. The means by which adequate protection is provided are specified in § 361 of the Bankruptcy Code. Section 361 sets forth three non-exclusive forms of adequate protection: (a) lump sum cash payments to the extent the use of property results in a diminution in value of an entity's interest in property; (b) provision of additional or replacement liens to the extent the use of property results in a diminution in value of an entity's interest in property; and (c) such

other relief as will result in an entity realizing the indubitable equivalent of its interest in property. 11 U.S.C. § 361.

26. The Debtor submits that the Secured Creditor will be adequately protected because the Debtor's proposed use of the Cash Collateral will prevent any diminution in the value of the Secured Creditor' collateral. Courts have held that adequate protection may be demonstrated by a showing that use of cash collateral maintains the value of a secured lender's collateral. See, e.g., In re Atrium Development Co., 159 B.R. 464, 470 (Bankr. E.D. Va. 1993) ("Adequate protection is typically established by the fact that cash is being used to maintain and enhance the value of the underlying income producing real property in which the creditor also usually holds a security interest."); In re Constable Plaza Assocs.. L.P., 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (authorizing debtor to use cash collateral to operate and maintain office building, thereby protecting secured lender's collateral).

27. Here, the Secured Creditor will be adequately protected by virtue of the Debtor's expenditure of cash in repairing and maintaining the Properties, serving the tenants and keeping the Properties occupied, thereby enhancing and protecting the value of the Properties in which the Secured Creditor hold a security interest. The Secured Creditor will be further adequately protected because the Cash Collateral Budget will ensure that the Debtor will use cash only for these purposes as well as for the administration of this chapter 11 case.

28. Under § 361 of the Bankruptcy Code, adequate protection may be provided by, among other things, periodic cash payments, granting a lienholder an additional or replacement lien and granting other relief to the extent that the usage of the cash collateral results in a decrease in the value of such entity's interest in such property. As discussed above, the proposed interim and

10

WEST\21979769.3

cash collateral orders provide for a replacement lien and the final cash collateral order will encompass some or all of the terms listed in paragraph 18 of this Motion.

29. For all the foregoing reasons, the Debtor submits that the terms of the interim and final cash collateral orders are reasonable and beneficial to the Debtor's estate and creditors. The cash collateral orders will permit the Debtor to protect and preserve its assets for the benefit of all stakeholders. Moreover, the cash collateral orders' provisions for adequate protection of the interests of the Secured Creditor in the Cash Collateral are fair and reasonable under the circumstances of these cases.

## **REQUEST FOR AUTHORITY TO USE CASH COLLATERAL IMMEDIATELY**

30. Bankruptcy Rule 4001(b) provides that a final hearing on a motion for authorization to use cash collateral pursuant to § 363 of the Bankruptcy Code may not be commenced earlier than 15 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

31. Pursuant to Bankruptcy Rule 4001 (b), the Debtor requests that the Court conduct an interim hearing and authorize the Debtor to use, on an interim basis, Cash Collateral in accordance with the Cash Collateral Budget and the terms and provisions of the cash collateral orders in order to (a) protect their property; (b) maintain its business operations; and (c) avoid immediate and irreparable harm to the Debtor's estate and all parties in interest.

32. As noted above, unless the Court authorizes interim use of the Cash Collateral, the Debtor will be unable to maintain its business operations and administer the chapter 11 case. Therefore, the Debtor requests that the Court enter a cash collateral order authorizing the

Debtor's use of the Cash Collateral in accordance with the Cash Collateral Budget until a final determination is made on this Motion.

## REQUEST FOR A FINAL HEARING

33. Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor respectfully requests that the Court set a date for the Final Hearing that is at least 15 days after the date of service of this Motion and approve the provisions for notice and the objection procedures set forth in the interim cash collateral order.

## REQUEST FOR WAIVER OF STAY

34. By this Motion, the Debtor seeks a waiver of any stay of the effectiveness of the interim cash collateral order. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." As set forth above, immediate use of Cash Collateral is essential to prevent potentially irreparable damage to the Debtor's estate. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the ten-day stay imposed by Bankruptcy Rule 6004(h).

## NOTICE

35. The Debtor has provided notice of this Motion to (i) the Office of the United States Trustee; (ii) the Debtor's twenty largest unsecured creditors; and (iii) the Secured Creditor. The Debtor submits that given the circumstances and the notice of the relief requested herein, no other or further notice is required.

## NO PRIOR REQUEST

36. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting (i) the relief requested herein and (ii) such other and further relief to the Debtor as the Court may deem proper.

Dated: June 14, 2010
Dallas, Texas

Respectfully submitted,
DLA Piper LLP (US)

By: */s/ Vincent P. Slusher*
Vincent P. Slusher
State Bar No. 00785480
vince.slusher@dlapiper.com
J. Seth Moore
State Bar No. 24027522
seth.moore@dlapiper.com
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

PROPOSED COUNSEL FOR DEBTOR AND
DEBTOR-IN POSSESSION

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served on June 14, 2010 to (i) the Office of the United States Trustee; (ii) the Debtor's twenty largest unsecured creditors as set forth on the attached service list; and (iii) the Debtor's secured creditor by overnight mail and/or ECF notification.

*/s/ J. Seth Moore*
J. Seth Moore