U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
United States Bankruptcy Judge

Signed July 06, 2010

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In Re: | § § | Chapter No.: 11 |
| Angaraka Limited Partnership | § § | Case No.: 10-33868-sgj11 |
| Debtor. | § | |

**AGREED FINAL ORDER: (I) AUTHORIZING USE OF CASH COLLATERAL; AND (II) GRANTING ADEQUATE PROTECTION TO SECURED CREDITOR**

On July 1, 2010, the Court held a final hearing on the Motion of Angaraka Limited Partnership (the "Debtor") for Interim and Final Orders Authorizing Use of Cash Collateral and Granting Related Relief (the "Motion"). At the hearing, the Debtor and its secured lender (the "Secured Creditor")[1], advised the Court that they have reached an agreement to allow the Debtor

---

[1] The Debtor's Secured Creditor is Bank of America, National Association, successor to Norwest Bank Minnesota, National Association, as Trustee and REMIC Administrator for the Registered Certificate holders of DLJ Commercial Mortgage Corp, Commercial Mortgage Pass-Through Certificates, Series 1999-CGI, acting by and through C-III Asset Management LLC (f/k/a Centerline Servicing LLC, which was f/k/a Centerline Servicing Inc., which was f/k/a ARCap Servicing, Inc., in its capacity as special servicer pursuant to that certain Pooling and Servicing Agreement dated March 1, 1999).

to use cash collateral pursuant to certain terms and conditions. In connection with that agreement the Debtor and Secured Creditor submit this Agreed Final Order: (i) Authorizing Use of Cash Collateral; and (ii) Granting Adequate Protection to Secured Creditor (the "Agreed Order") and stipulate as follows:

A. The Court has jurisdiction to entertain the relief requested in the Motion on a final basis pursuant to 28 U.S.C. §§ 157 and 1334. The matters raised in the Motion are core proceedings pursuant to 28 U.S.C. § 157(b). Venue for the Debtor's case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. On May 31, 2010 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtor has continued to manage its property and operate its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

C. As of the Petition Date, the Debtor was indebted to Secured Creditor in the approximate amount of $17,000,000.00. The Debtor is also indebted to Secured Creditor for accruing interest, and other charges, including legal expenses (collectively, the "Secured Debt").

D. The Secured Debt is secured by first priority, valid, perfected liens and security interests in all of the Debtor's assets including all of the Debtor's real and personal property and all rents and proceeds, including a first priority security interest in the Debtor's rents and proceeds (the "Collateral").[2] Thus, all of the Debtor's cash and cash proceeds are encumbered by a security

---

[2] Secured Creditor reserves the right to assert that the Debtor made an absolute assignment of rents to Secured Creditor and thus the rents are not property of the Debtor's estate. Therefore, the use of the phrase "cash collateral," "replacement lien," and such similar phrases when referring to Secured Creditor's rights in the rents and other money generated by the Debtor's property shall not constitute an admission by any party or a finding by the Court in the Agreed Order that such funds are property of the estate.

interest in favor of Secured Creditor and, as such, constitute "cash collateral" of Secured Creditor (as such term is defined in § 363(a) of the Bankruptcy Code, the "Cash Collateral").

E. The Secured Debt owed to Secured Creditor constitutes an allowable claim against the Debtor and is not subject to an objection or dispute of any kind, (except as may be set forth in this Agreed Order) including, but not limited to, subordination pursuant to § 510 of the Bankruptcy Code and that any other party-in-interest with standing to bring such a claim must do so within 30 days after the meeting of creditors or the filing of Secured Creditor's proof of claim, whichever is later.

F. The Debtor does not possess and will not assert any claim, counterclaim, setoff, surcharge claim, recharacterization claim or defense of any kind or nature that would in any way affect the validity, enforceability, priority or nonavoidability of the claims of Secured Creditor.

G. None of Secured Creditor's Collateral, including the Cash Collateral, shall be subject to surcharge, pursuant to §§ 506(c), 552(b) or 105(a) of the Bankruptcy Code or otherwise, by the Debtor or any other party in interest, and no consent to a charge against the Collateral, including the Cash Collateral, pursuant to §§ 506(c), 552(b) or 105(a) or any other section of the Bankruptcy Code shall be implied from any action, inaction or acquiescence by Secured Creditor.

H. The Debtor does not have consent for the use of Cash Collateral, without the protections, terms, and conditions provided in this Agreed Order. Secured Creditor is entitled, pursuant to §§ 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Collateral, including the Cash Collateral, to the extent of the diminution in value thereof, for (i) the use of the Cash Collateral; (ii) the use, sale, lease or other diminution in value of the

Collateral, including the Cash Collateral; and (iii) the imposition of the automatic stay. Such adequate protection shall include, among other things:

    a. a superpriority claim superior to any other claim asserted or which may be asserted against the Debtor;

    b. a post-petition lien on all of the Debtor's assets to the extent that Cash Collateral is used;

    c. a post-petition lien to extend to all property of the Debtor, but not including causes of action available to the Debtor under Chapter 5 of the Bankruptcy Code[3];

    d. payment of the budgeted amount of cash flow in excess of budgeted expenditures, labeled in the Budget (as defined herein) as "Cash Flow Before Debt Service"; the payments shall be subject to the variance from budgeted expenditures detailed in paragraph 8 of this Agreed order; those payments shall be applied to the outstanding indebtedness of the Debtor to Secured Creditor;

    e. continued insurance in place and requirement that proof of insurance shall be provided to Secured Creditor on a go forward basis;

    f. escrowing in dedicated DIP accounts the budgeted amounts required to pay for insurance and real and personal property taxes;

    g. stringent reporting requirements from the Debtor to Secured Creditor, as more fully set forth in paragraph 8 of this Agreed Order, and the ability of Secured Creditor to audit the Debtor's compliance with the terms of this Agreed Order and the Budget;

    h. payment of Secured Creditor's fees and expenses in the event of a sale or plan confirmation after 10 days of Secured Creditor sending invoices to the Debtor, the US Trustee and, if a committee of unsecured creditors is appointed, the Committee and, automatic allowance of those fees provided that no written objection is received by Secured Creditor as to some or all of those fees and expenses within that 10 day period; the Debtor reserves its rights to review and object to any request for fees and expenses submitted by Secured Creditor;

    i. either a sale of all the Debtor's assets or plan confirmation must occur not later than the dates specified in paragraph 9 of this Agreed Order;

    j. the automatic lifting of the stay for Secured Creditor in the event that the Debtor

---

[3] While the Debtor has retained its right to bring causes of action under Chapter 5 of the Bankruptcy Code, and has not granted Secured Creditor a lien against those causes of action, the Debtor has waived its right to bring any such cause of action against the Secured Creditor. Any party in interest who wishes to ask the court for permission to prosecute in the Debtor's stead, any Chapter 5 cause of action against Secured Creditor, must do so within the time allotted for objecting to the Secured Creditor's claim set forth in paragraph 15 of this Agreed Order.

fails to comply with any term of this Agreed Order, subject to the Debtor's opportunity to cure such default as provided in paragraph 10(a) of this Agreed Order; and

k. the Debtor's agreement that it will limit the use of Cash Collateral to the expenditures contained in the Budget.

I. Good cause has been shown for the entry of this Agreed Order. The Debtor has an immediate and urgent need to use Cash Collateral. Absent the use of Cash Collateral, the Debtor cannot continue its business operations, and its ability to maximize the value of its estate will be jeopardized. By preventing the Debtor from using Cash Collateral to continue its business operations, it will not be able to make necessary repairs and maintenance on its properties (the "Properties"), or otherwise serve the current and future tenants who live there. This will jeopardize the Debtor's ability to keep the Properties occupied, which is the Debtor's only source of revenue. Thus, permitting the Debtor to use the Cash Collateral, on the terms and conditions prescribed herein, is vital to avoid immediate and irreparable harm to the Debtor's estate. Further, the interests of Secured Creditor will not be adequately protected if the protections, conditions, and rights contained in, and conferred by, this Agreed Order and subject to the consents set forth herein, are not granted.

J. The terms of the Debtor's use of Cash Collateral are: (i) fair and reasonable; (ii) reflect the Debtor's prudent exercise of business judgment consistent with its fiduciary duties; (iii) constitute reasonably equivalent value and fair consideration; and (iv) are essential and appropriate for the continued operation and management of the Debtor's business and the preservation of its assets and properties. Entry of this Agreed Order is in the best interests of the Debtor and its estate and creditors.

K. Notice of the final hearing on the Motion has been provided to: (i) the Office of

the United States Trustee; (ii) the Debtor's twenty largest unsecured creditors; (iii) the Debtor's secured creditors; (iv) the Debtor's utility providers; and (v) all parties who have filed requests for notice under Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 2002. In view of the relief requested, such notice constitutes sufficient notice under Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001.1(a)(1) and no other notice need be given.

L. The Court adopts the foregoing stipulations and representations as its findings and further finds that the notice is appropriate under the circumstances, that this Agreed Order has been negotiated in good faith and at arm's length, that Secured Creditor has acted in good faith, and that it is in the best interest of the Debtor and its creditors to enter into this Agreed Order, and therefore there is good cause for the entry of this Agreed Order.

**THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED:**

1. The Motion is hereby GRANTED on a final basis as set forth herein and the Debtor's use of the Cash Collateral is APPROVED on a final basis and any and all objections to the Motion that have not previously been withdrawn or resolved are hereby overruled.

2. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

3. Due, proper, timely, adequate, and sufficient notice of the Motion, and the transactions contemplated thereby, has been provided to all parties entitled thereto and such notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, and the transactions contemplated thereby, is or shall be required.

4. Subject to the terms and conditions set forth herein, Debtor is hereby authorized to

use the Cash Collateral and other Collateral as set forth below, in the ordinary course of its business.

5. The Debtor is hereby authorized to use Cash Collateral and to provide the adequate protection as authorized herein.

6. Except as may be set forth in this Agreed Order, the Debtor or any other party, shall not use any Cash Collateral or the proceeds thereof: (a) to challenge or otherwise contest in any proceeding: (i) the validity, perfection or priority of any of the liens and security interests on any of the Debtor's assets in favor of Secured Creditor; (ii) the validity or enforceability of the obligations of the Debtor to Secured Creditor; and (iii) the validity or enforceability of the adequate protection granted to Secured Creditor granted pursuant to this Agreed Order or any other Order of this Court; or (b) to investigate, commence or prosecute any motion, proceeding or cause of action seeking an affirmative recovery against Secured Creditor, or any of its, attorneys, advisors or representatives; or (c) to fund acquisitions, capital expenditures, capital leases, or other transactions not in the ordinary course of the Debtor's business, except as otherwise set forth herein.

7. The Debtor shall not make any payments or incur any obligations other than those as may be allowed herein and as set forth in the Budget. The Debtor shall not make any payment of any proceeds constituting part of the Cash Collateral (including, without limitation, proceeds thereof) to: (i) any holder of an allowed claim under or pursuant to § 503(b)(9) of the Bankruptcy Code; or (ii) any unsecured creditor of a Debtor on account of claims arising prior to the commencement of this bankruptcy case including, without limitation, payments in satisfaction of reclamation claims of unpaid suppliers of goods delivered to a Debtor before the commencement of this bankruptcy case (regardless of whether such claims have been granted administrative expense priority status pursuant to § 546(c) of the Bankruptcy Code), prior to confirmation of any plan of reorganization or plan of liquidation, unless such payments are specifically provided for in the Budget.

8.  On a monthly basis, the Debtor shall provide Secured Creditor a budget of projected uses of cash collateral for the following month (the "Budget").[4] Each month, the Debtor shall deliver to Secured Creditor, a consolidated cash flow report providing a comparison of actual payments to the Budget line items for the prior monthly period. For the term encompassed by the Budget, the Debtor's actual expenditures in respect of each line item set forth in the Budget shall not exceed one hundred ten percent (110%) of the cumulative amount so budgeted for such line item. In addition, the Debtor shall furnish Secured Creditor with: (i) copies of all monthly operating reports that are to be filed with the Office of the U.S. Trustee during the term of this Agreed Order; (ii) monthly statements for all DIP bank accounts; and (iii) a monthly accounting of accounts receivable collections and any other cash receipts.

9.  The Debtor shall file a plan of reorganization or liquidation or a motion to sell its assets not later than December 15, 2010 and obtain confirmation of a plan or approval of any motion to sell its assets not later than February 28, 2011. The failure of the Debtor to file a plan, obtain confirmation of a plan, file a motion to sell its assets or obtain approval of a sale of the Debtor's assets by the specified dates shall constitute an event of default and the Debtor's authority to use cash collateral shall terminate without notice or further order of this Court.

10. Except as otherwise provided herein, the Debtor's authorization to use Cash Collateral shall terminate on the earliest of: (a) any violation or breach of any term of this Agreed Order by the Debtor that is not cured within five (5) business days of receipt by the Debtor and Debtor's counsel, of notice of such default, violation or breach (except that in the third instance of default the automatic stay shall automatically terminate); (b) the "effective date" of any plan of reorganization or plan of liquidation confirmed in this bankruptcy case; (c) the entry of an order by the Court granting relief from the automatic stay permitting foreclosure of any assets of the Debtor; or (d) the entry of an order of dismissal or conversion of this bankruptcy case (collectively, (a) through (d) herein, the "Termination Date").

---

[4]  **A budget of projected uses of Cash Collateral from July 2010 to December 2010 is attached to this Agreed Order as Exhibit 1 and is filed with the Court as Docket No. 45**.

11. The Debtor is authorized to enter into such agreements and take such actions in regard to the structure of its cash management system as is necessary to comply with this Agreed Order. Any material changes from such pre-petition cash management system must be acceptable to Secured Creditor.

12. In accordance with the provisions of § 363(e) of the Bankruptcy Code and in addition to other protections provided in this Agreed Order or otherwise, as adequate protection for the amount of any diminution in value in the Collateral, including the Cash Collateral, resulting from the Debtor' use of Cash Collateral as set forth herein, Secured Creditor shall receive the following:

    (a) a claim having priority over any and all expenses of the kind specified in, among other sections of the Bankruptcy Code, §§ 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726. No other costs or administrative expenses which have been or may be incurred in this bankruptcy case, in any conversion of this bankruptcy case pursuant to § 1112 of the Bankruptcy Code, or in any other proceeding related thereto, and no priority claims, including, without limitation, any other superpriority claims, are or will be prior to or on a parity with the superpriority adequate protection claim amount granted to Secured Creditor;

    (b) valid, binding, and enforceable liens in all of the Debtor's assets, including, without limitation, property and interests of any nature whatsoever, real and personal, tangible and intangible, including without limitation accounts receivable, general intangibles, payment intangibles, supporting obligations, investment property, commercial tort claims, inventory, rolling stock, machinery, equipment, subsidiary capital stock, chattel paper, documents, instruments, deposit accounts, contract rights, tax refunds and the proceeds, products, rents and profits thereof, whether arising from § 552(b) of the Bankruptcy Code or otherwise and 553 of the Bankruptcy Code and all proceeds thereof, subject and subordinate only to: (a) amounts payable pursuant to 28 U.S.C. §1930(a)(6) and any fees payable to the clerk of the Court; and (b) liens that secure ad valorem property taxes plus any penalties and interest that may accrue;

    (c) payment of the budgeted amount of cash flow in excess of budgeted expenditures, labeled in the Budget as "Cash Flow Before Debt Service"; the payments shall be subject to the variance from budgeted expenditures detailed in paragraph 8 of this Agreed Order; those payments shall be applied to the outstanding indebtedness of the Debtor to Secured Creditor;

    (d) continued insurance in place and requirement that proof of insurance shall be provided to Secured Creditor on a go forward basis;

(e) escrowing in dedicated DIP accounts the budgeted amounts required to pay for insurance and real and personal property taxes;

(f) stringent reporting requirements from the Debtor to Secured Creditor, as more fully set forth in paragraph 8 of this Agreed Order, and the ability of Secured Creditor to audit the compliance with the terms of the cash collateral order and Budget;

(g) payment of Secured Creditor's fees and expenses in the event of a sale or plan confirmation after 10 days of Secured Creditor sending invoices to the Debtor, the US Trustee and, if a committee of unsecured creditors is appointed, the Committee and, automatic allowance of those fees provided that no written objection is received by Secured Creditor as to some or all of those fees and expenses within that 10 day period; the Debtor reserves its rights to review and object to any request for fees and expenses submitted by Secured Creditor;

(h) either a sale of all of the Debtor's assets or plan confirmation must occur not later than the dates specified in paragraph 9 of this Agreed Order;

(i) the automatic lifting of the stay for Secured Creditor in the event that the Debtor fails to comply with any term of this Agreed Order, subject to the Debtor's opportunity to cure such default as provided in paragraph 10(a) of this Agreed Order; and

(j) the Debtor's agreement that they will limit the use of Cash Collateral to the expenditures contained in the Budget.

13. Notwithstanding anything herein to the contrary, the grant of adequate protection to Secured Creditor is without prejudice to any right(s) of: (a) Secured Creditor to seek a modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.

14. Upon entry of this Agreed Order, none of Secured Creditor's Collateral, including the Cash Collateral, shall be subject to surcharge, pursuant to §§ 506(c), 552(b) or 105(a) of the Bankruptcy Code or otherwise, by the Debtor or any other party in interest, and no consent to a charge against the Collateral, including the Cash Collateral, pursuant to §§ 506(c), 552(b) or 105(a) or any other section of the Bankruptcy Code shall be implied from any action, inaction or acquiescence by Secured Creditor.

15. The Secured Debt owed to Secured Creditor shall constitute an allowable claim

against the Debtor and not be subject to an objection or dispute of any kind, (except as may be set forth in this Agreed Order) including, but not limited to, subordination pursuant to § 510 of the Bankruptcy Code, except that any other party-in-interest with standing to bring such a claim must do so within 30 days after the meeting of creditors or the filing of Secured Creditor's proof of claim, whichever is later.

16. The Debtor shall not assert any claim, counterclaim, setoff, surcharge claim, recharacterization claim or defense of any kind or nature (except as set forth in this Agreed Order) that would in any way affect the validity, enforceability, priority or nonavoidability of the claims of Secured Creditor.

17. By reviewing or approving the Budget or enforcing any rights and remedies available under this Agreed Order, Secured Creditor shall have no liability to any third party nor shall it be deemed to be in control of the operations or assets of the Debtor or be acting as a "responsible person" or "owner" or "operator" with respect to the operation or the management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive, Environmental Response, Compensation and Liability Act, as amended, or in any other federal or state statute or otherwise).

18. The Debtor shall execute and deliver to Secured Creditor all such agreements, financing statements, instruments and other documents as Secured Creditor may reasonably request to evidence, confirm, validate or perfect the post-petition adequate protection liens granted pursuant hereto. All post-petition adequate protection liens granted herein shall be, and they hereby are, deemed perfected, and no further notice, filing or other act shall be required to effect such perfection; provided, however, if Secured Creditor shall, in its sole discretion, choose

to file such mortgages, financing statements, notices of liens and security interests, and other similar documents, all such mortgages, financing statements or similar instruments: (i) shall be deemed to have been filed or recorded as of the date of this Agreed Order; and (ii) no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

19. The provisions of this Agreed Order shall be binding upon and inure to the benefit of Secured Creditor and the Debtor and any successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the Debtor's estate, any examiner appointed pursuant to § 1104 of the Bankruptcy Code, and any other fiduciary hereafter appointed as a legal representative of the Debtor or with respect to the property of the Debtor's estate).

20. Based on the findings set forth in this Agreed Order and in accordance with § 363(e) of the Bankruptcy Code, which is applicable to the arrangements contemplated by this Agreed Order, in the event that any or all of the provisions of this Agreed Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of the post-petition adequate protection liens and all other adequate protection authorized or created hereby or thereby. Notwithstanding any such modification, amendment or vacation, pursuant to § 363(e) of the Bankruptcy Code, any claim granted to Secured Creditor hereunder or arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by this Agreed Order, and Secured Creditor shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein with respect to any such claim.

21. The Debtor is authorized and directed to do and perform all acts, to make, execute

and deliver all instruments and documents (including, without limitation, to execute additional security agreements, mortgages and financing statements) contemplated or authorized by this Agreed Order.

22. Until the amount owing to Secured Creditor has been paid in full the Debtor shall not seek any order dismissing or converting this bankruptcy case unless Secured Creditor agrees to such dismissal or conversion in writing. If an order dismissing or converting this bankruptcy case under § 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with §§ 105 and 349(b) of the Bankruptcy Code): (i) that the effectiveness of any dismissal shall not occur until Secured Creditor has received a properly recorded mortgage and all related perfection documents in all of the Debtor's real property; (ii) the superpriority claims and post-petition adequate protection liens granted pursuant to this Agreed Order shall continue in full force and effect and shall maintain their priorities as provided in this Agreed Order until all obligations in respect thereof shall have been satisfied and paid in full in cash (and that such superpriority claims and post-petition adequate protection liens shall, notwithstanding such dismissal or conversion, remain binding on all parties in interest); and (iii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding dismissal or conversion, for the purposes of enforcing the superpriority claims and post-petition adequate protection liens.

23. None of the Collateral, including the Cash Collateral, shall be subject to the doctrine of marshaling.

24. The entry of this Agreed Order shall not prejudice or limit the rights of Secured Creditor to file and pursue a motion to lift the § 362 automatic stay to foreclose on the Collateral, including the Cash Collateral or file a motion for adequate protection. Nor shall anything in this

Agreed Order be construed as an admission or used as evidence that the protection obtained in this Agreed Order is adequate for purposes of any hearing on a motion for relief from the automatic stay.

25. The automatic stay arising under § 362 of the Bankruptcy Code is vacated and modified solely to the extent necessary to permit the Debtor and Secured Creditor to implement the provisions of this Agreed Order.

26. To the extent of any conflict between or among the express terms or provisions of the Motion, any other order of this Court, or any other agreements and the express written terms and provisions of this Agreed Order, the terms and provisions of this Agreed Order shall govern.

27. Upon the occurrence of the Termination Date, other than as specifically set forth herein, all cash and cash equivalents remaining in the Debtor's estate shall be immediately paid for the benefit of Secured Creditor.

28. Within three (3) business days from entry of this Agreed Order, the Debtor shall serve by United States mail, first class postage prepaid, copies of this Agreed Order on: (i) the Office of the United States Trustee; (ii) the Debtor's twenty largest unsecured creditors; (iii) the Debtor's secured creditors; and (iv) all parties who have filed requests for notice under Bankruptcy Rule 2002 and no other or further notice need be given.

29. Nothing in this order shall be construed to acknowledge or grant liens that prime pre-petition and post-petition ad valorem property tax liens.

30. This Agreed Order is valid immediately and is effective upon its entry notwithstanding the possible or potential application of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this order on the Court's

docket in this case.

# # # **END OF ORDER** # # #