Clay M. Taylor
Texas Bar I. D. 24033261
C. Josh Osborne
Texas Bar I. D. 24065856
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:     817/332-2500
Telecopy:      817/878-9280

*Counsel for C-III Asset Management LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 10-33868-11 |
| ANGARAKA LIMITED PARTNERSHIP | § | |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

## C-III ASSET MANAGEMENT LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, DALLAS, TX 75242 BEFORE CLOSE OF BUSINESS ON SEPTEMBER 16, 2010, WHICH IS AT LEAST 17 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE.**

**ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

C-III Asset Management LLC (f/k/a Centerline Servicing LLC, f/k/a ARCap Servicing, Inc., in its capacity as special servicer pursuant to that certain Pooling and Servicing Agreement dated March 1, 1999) ("C-III Asset Management") hereby files its Motion for Relief from Automatic Stay (the "Motion") against Angaraka Limited Partnership (the "Debtor"). In support of the Motion, C-III Asset Management would respectfully show as follows:

## I. JURISDICTION

1. The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This bankruptcy case and all related pleadings have been referred to this Court pursuant to 28 U.S.C. § 157. The Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G) and (O).

## II. BACKGROUND

2. On May 31, 2010 (the "Petition Date"), Debtor filed for relief under Chapter 11 of the Bankruptcy Code. Since that time, Debtor has continued to operate its business as debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3. Prior to the Petition Date, on October 29, 1998, General Electric Capital Corporation ("GECC") and JRC Dallas Apartments Limited Partnership ("JRC") entered into a loan agreement (the "Loan Agreement") whereby GECC agreed to lend JRC $20,350,000.00. A copy of the Loan Agreement is attached to this Motion as **Exhibit No. 1**. The parties agreed upon a 6.9% interest rate and a default interest rate of 5%. The parties also agreed to a deferred interest rate of 2% which JRC would be responsible for retroactive to October 29, 1998, if the loan was not paid in full by November 1, 2009.[1]

---

[1] Thus, the Debtor's interest rate if the loan was not in default would be 8.9%.

4. JRC executed a promissory note (the "Note") in favor of GECC that same day. A copy of the Note is attached to the Motion as **Exhibit No. 2**. The Note was secured by a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated October 29, 1998 (the "DOT"), covering: (i) Lot A, Block 3 of Belt Line Estates Addition, Irving, Dallas County, Texas; (ii) a tract of land situated in the D. Myers Survey, Abstract No. 923, Carrollton, Dallas County, Texas; (iii) Lot 27, Block 14, the Meadows Addition, Phase I, Fort Worth, Tarrant County, Texas; and (iv) Lot 4, Block A, of the Replat of Lot A-2 Woodcrest Addition, Irving, Dallas County, Texas (collectively, the "Properties"). The DOT also covers improvements on those parcels of real property, fixtures, personalty, and rents (collectively, with Properties, the "Collateral"). Pursuant to the DOT, JRC also made an absolute assignment of leases and rents to GECC. A copy of the DOT is attached as **Exhibit No. 3** (the Loan Agreement, Note and DOT shall collectively be referred to as the "Loan Documents").

5. Financing statements evidencing GECC's security interest in the Collateral and the assignment of leases and rents were filed in Dallas County and Tarrant County, Texas and with the Secretary of State of Illinois.

6. Pursuant to a Pooling and Servicing Agreement, the loan was securitized and sold to the Registered Certificate Holders (the "Registered Certificate Holders") of the DLJ Commercial Mortgage Corp, Commercial Mortgage Pass-Through Certificates, Series 1999-CGI, dated March 1, 1999. Bank of America, National Association, currently serves as the Trustee and REMIC Administrator for the Registered Certificate Holders, acting by and through C-III Asset Management, as special servicer.

7. In 2005, the Debtor acquired the Properties from JRC and assumed all obligations and liabilities under the Loan Documents, pursuant to that certain Assumption Agreement, dated November 8, 2005 (the "Assumption Agreement"). A copy of the Assumption Agreement is attached to the Motion as **Exhibit No. 4**.

8. In 2009, the Debtor defaulted on its obligations under the Loan Documents. C-III Asset Management accelerated the Note and posted the Properties for foreclosure. The Debtor filed for bankruptcy one day prior to the scheduled foreclosure sales.

9. On June 14, 2010, the Debtor filed its Motion For Interim and Final Orders Authorizing Use of Cash Collateral and Granting Related Relief (the "Cash Collateral Motion") [Docket No. 16]. A final cash collateral order was entered granting the Cash Collateral Motion on July 6, 2010 (the "Cash Collateral Order") [Docket No. 46]. In the Cash Collateral Order the parties agreed that "the entry of this Agreed Order shall not prejudice or limit the rights of Secured Creditor to file and pursue a motion to lift the § 362 automatic stay to foreclose on the Collateral, including the Cash Collateral or file a motion for adequate protection. Nor shall anything in this Agreed Order be construed as an admission or used as evidence that the protection obtained in this Agreed Order is adequate for purposes of any hearing on a motion for relief from the automatic stay."

10. As of August 6, 2010, the Debtor owed approximately $17,714,172.83 on the Note. *See* C-III Asset Management's Proof of Claim, **Exhibit No. 5**. However, due to the state of disrepair the Properties are in and the decline in the market for older multifamily rental units, a certified appraiser retained by C-III Asset Management, Butler Burgher Group, determined that the current value of the Properties securing the Note is $17,690,000.00. *See* **Exhibit Nos. 6, 7, 8**

**and 9**.[2]  Thus, as of the date C-III Asset Management filed its proof of claim, it was undersecured by approximately $24,172.83.

11. Furthermore, the Note has been in default due to the Debtor's failure to make timely payments and interest is accruing on the Note at $6,628.79 per day. Currently, in a 30 day month, the monthly regular interest on the Note is $127,329.90 and the default interest is an additional $71,533.80 per month. However, pursuant to the Debtor's projected budget for the months of July-December, its cash flow projections before debt service, range between $45,161.00 and $67,789.00.

### III. DISCUSSION

12. By this Motion, C-III Asset Management seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d), to exercise all of its legal, contractual and equitable rights in and to the Collateral and to apply proceeds from disposition of the Collateral to the indebtedness owed by the Debtor to C-III Asset Management.

13. Section 362(d) of the Bankruptcy Code provides that a court shall grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

14. Sufficient cause exists to lift the automatic stay because C-III Asset Management's interest in the Collateral is not adequately protected. C-III Asset Management is currently undersecured. Furthermore, the amount owed to C-III Asset Management will increase as the case progresses because the Debtor's interest payments are three times to four times its projected cash flow at the default interest rate. Even if the Debtor was not in default on the Note, its interest payments are double the Debtor's cash flow. Thus, the Debtor is unable to make

---

[2] Due to the large size of the appraisals, only summaries of the appraisals are attached to this Motion. The complete appraisals will be sent to Debtor's counsel contempraneously with the filing of this Motion.

payments sufficient to protect C-III Asset Management's security interest. In addition, the Properties are in a state of disrepair.[3] Moreover, the Properties are each older properties having been built in the 1970s and 1980s. As a result, the Properties are rapidly declining in value in an unforgiving commercial real estate market. This confirmed depreciation of the Properties, in conjunction with the Debtor's inability to even make the minimum interest payments—much less reduce the principal balance—will lead to a continued deterioration of C-III Asset Management's collateral position. This deterioration worsens each day.

15. The Bankruptcy Code also provides that "the court shall grant relief from the stay . . . with respect to a stay of an act against property . . . if— (A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).

16. Here, Debtor does not have any equity in the Collateral. As stated above, the amount that the Debtor owes exceeds the value of the Properties, which disparity will only grow larger as the case progresses. Therefore, the Debtor will not be able to sell the Collateral for an amount sufficient to pay C-III Asset Management. Furthermore, given the value of the Collateral and the inability of the Debtor's equity owners to infuse any more new value to the

---

[3] The Debtor has acknowledged this multiple times in its pleadings filed with this Court. For, example, in the Cash Collateral Motion, the Debtor admitted that the Properties were "dilapitaded to the point of failing to satisfy required building codes" and that the Debtor was only able to resolve the most pertinent repair issues at the Properties. Furthermore, in the § 341 Creditors Meeting, Nancy Resnick, the United States Trustee, asked a witness for the Debtor whether all of the code violation issues have been taken care of. The witness responded that the Debtor has not resolved these issues. When questioned by counsel for C-III Asset Management regarding how much repairs were left to be completed, the witness said that ***only $150,000 out of $1 million in repairs required to resolve compliance issues had been made***. Section 341 Meeting Tr. 8:24-25, 9:1, 19:8-17, July 19, 2010. A copy of the transcript is attached as **Exhibit No. 10**.

Debtor[4], the Debtor does not have any viable means of reorganizing in a manner enabling it to pay C-III Asset Management in full.

## IV. REQUEST FOR RELIEF

Angaraka requests that the Court enter an order (a) granting the Motion; (b) waiving the requirements of Bankruptcy Rule 4001(a)(3) to permit C-III Asset Management to enforce and implement immediately any order of this Court granting relief from the automatic stay; and (c) for such other and further relief to which C-III Asset Management may be entitled.

Respectfully submitted,

/s/ *Clay M. Taylor*
Clay M. Taylor
Texas Bar I. D. 24033261
clay.taylor@kellyhart.com
C. Josh Osborne
Texas Bar I. D. 24065856
c.joshosborne@kellyhart.com
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:   817/332-2500
Telecopy:    817/878-9280

*Counsel for C-III Asset Management LLC*

---

[4] The Debtor's equity is owned by a "closed end" fund. A closed end fund by its very nature is not contractually allowed to infuse new equity into the properties/assets it owns. *See also,* § 341 Meeting Tr. 20:8-25, 21:1-2, July 19, 2010.

## CERTIFICATE OF CONFERENCE

In accordance with L.B.R. 4001.1(a), 9014.1(c)(1) and District Court Local Civil Rule 7.1(a), I contacted counsel for Debtor regarding this Motion on August 31, 2010. On that date, Debtor's counsel indicated that the Debtor opposes the relief requested in this Motion.

/s/ *Clay M. Taylor*
Clay M. Taylor

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served on August 31, 2010 upon the counsel for the Debtor, the Office of the United States Trustee, the Debtor's 20 largest creditors, and all persons who have filed a notice of appearance and request for service of pleadings in the chapter 11 case via first class, U.S. mail, postage prepaid, e-mail, or via ECF Electronic Notice.

/s/ *C. Josh Osborne*
C. Josh Osborne