Vincent P. Slusher
State Bar No. 00785480
vince.slusher@dlapiper.com
J. Seth Moore
State Bar No. 24027522
seth.moore@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone:  (214) 743-4572
Facsimile:  (972) 813-6267

COUNSEL FOR DEBTOR AND
DEBTOR-IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | **Chapter No.:  11** |
| | § | |
| **Angaraka Limited Partnership** | § | **Case No.:  10-33868-sgj11** |
| | § | |
| **Debtor.** | § | |

**DISCLOSURE STATEMENT FOR**
**CHAPTER 11 PLAN OF REORGANIZATION**
**FILED BY DEBTOR, ANGARAKA LIMITED PARTNERSHIP, DATED SEPTEMBER 28, 2010**

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE DEBTORS' CHAPTER 11 PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT**

# DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE CHAPTER 11 PLAN OF REORGANIZATION FILED BY DEBTOR ANGARAKA LIMITED PARTNERSHIP, DATED SEPTEMBER 28, AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS AND SCHEDULES ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OR CLAIMS OF THE DEBTORS OR REID IN THESE CASES SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS PURSUANT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND OTHER APPLICABLE EVIDENTIARY RULES. THE DEBTORS RESERVE THEIR RIGHTS TO ASSERT IN ANY SUCH CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS THAT THIS DISCLOSURE STATEMENT IS NOT ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING ANY OF THE DEBTORS OR ANY OTHER PARTY.

THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, OR THE DEBTOR IN THIS CASE. FOR A DESCRIPTION OF THE PLAN AND VARIOUS RISKS AND OTHER FACTORS PERTAINING TO THE PLAN AS IT RELATES TO CLAIMS AGAINST AND INTERESTS IN THE DEBTOR, PLEASE SEE ARTICLES VIII AND IX.

THE DEBTOR BELIEVES THAT THE PLAN WILL ENABLE THE DEBTOR TO ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR AND THE HOLDERS OF ALL CLAIMS. ACCORDINGLY, THE DEBTOR URGES HOLDERS OF CLAIMS TO VOTE TO ACCEPT THE PLAN. FOR FURTHER INFORMATION AND INSTRUCTION ON VOTING TO ACCEPT OR REJECT THE PLAN, SEE ARTICLE XIII OF THE DISCLOSURE STATEMENT, ENTITLED "THE SOLICITATION AND VOTING PROCEDURE."

IF YOU HAVE QUESTIONS ABOUT THE PACKET OF MATERIALS THAT YOU RECEIVED, PLEASE CONTACT VINCENT P. SLUSHER, DLA PIPER US LLP, 1717 MAIN ST. SUITE 4600, DALLAS, TX 75201, TELEPHONE NUMBER (214) 743-4572, OR VINCE.SLUSHER@DLAPIPER.COM.

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

    A.    Description of Business .................................................................................1

    B.    Cash Collateral ..............................................................................................3

    C.    Pending Litigation .........................................................................................4

            1.    <u>Avoidance Actions</u> ..........................................................................4

II.    SUMMARY OF PLAN .......................................................................................4

    A.    Classification and Treatment of Claims and Interests Under the Plan .........4

    B.    Summary of Confirmation Requirements........................................................4

    C.    Voting Instructions and Deadline ..................................................................5

            1.    Solicitation Process ..........................................................................5

            2.    General Information ..........................................................................5

            a.    Unimpaired Classes Are Deemed to Accept the Plan and Do Not Vote ...............................................................................5

            3.    Claims Which Are Subject To A Pending Objection ....................5

            4.    Voting and Record Date ...................................................................6

    D.    The Confirmation Hearing.............................................................................7

    E.    Definitions .....................................................................................................7

III.    THE PLAN OF REORGANIZATION ...............................................................7

    A.    Classification and Treatment of Claims and Interests Under the Plan .........7

    B.    Treatment of Administrative Claims and Priority Tax Claims ....................8

            1.    Administrative Claims......................................................................8

            2.    Fee Claims ........................................................................................8

            3.    Priority Tax Claims ..........................................................................8

    C.    Treatment of Classified Claims and Interests................................................9

    D.    Funding of the Plan .......................................................................................10

    E.    Implementation of the Plan............................................................................10

    F.    Risk Factors in Connection with the Plan ....................................................11

    G.    Provisions Governing Distributions ..............................................................12

            1.    Distributions Under the Plan.  The Plan provides the following with respect to distributions to Claim holders: ...........12

            2.    Resolution of Disputed Claims.......................................................12

         

H.    Miscellaneous Matters ....................................................................15

      1.    U.S. Trustee Fees ..............................................................15

      2.    Exemption from Transfer Taxes.......................................16

      3.    Bar Date for Certain Claims ..............................................16

      4.    Bar Date for Fee Claims ....................................................16

      5.    Effectuating Documentation...............................................16

      6.    Injunctions ...........................................................................16

      7.    Post-Confirmation Employment and Payment of
            Professionals........................................................................17

      8.    Retention of Jurisdiction....................................................17

      9.    Modification of Plan ...........................................................18

      10.   Severability .........................................................................19

      11.   Binding Effect .....................................................................19

I.    Conditions for Confirmation of the Plan .........................................19

      1.    Conditions to Confirmation.  The following are conditions
            to the confirmation of the Plan: ........................................19

      2.    Conditions to Effective Date ..............................................19

      3.    Waiver ..................................................................................20

J.    Treatment Of Executory Contracts And Unexpired Leases .......................20

      1.    Rejection of Executory Contracts and Unexpired Leases ...........20

      2.    Assumption of Executory Contracts and Unexpired Leases
            If Not Rejected....................................................................21

      3.    Contract Assumption Schedule. .........................................22

      4.    Contracts and Leases Entered into or Assumed After the
            Commencement Date. ..........................................................22

      5.    Obligations to Indemnify Directors, Officers and
            Employees. ..........................................................................22

IV.   STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN OF
      REORGANIZATION.........................................................................22

      A.    Elements of Confirmation .................................................23

      B.    Best Interests of Creditors .................................................23

      C.    Feasibility of the Plan ........................................................23

WEST\222510024.1

TABLE OF CONTENTS
(continued)

| | | | |
|---|---|---|---|
| | D. | Severability of Plans | 23 |
| | E. | Confirmation of the Plan if One or More Classes Do Not Accept | 24 |
| | F. | Hearing on Confirmation of the Plan | 24 |
| V. | CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | | 25 |
| VI. | EFFECTS OF PLAN CONFIRMATION | | 25 |
| VII. | ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN | | 26 |
| | A. | Liquidation Under Chapter 7 | 26 |
| | B. | Alternative Plan of Reorganization | 26 |
| VIII. | CONCLUSION AND RECOMMENDATION | | 26 |

## EXHIBITS

A.   Plan of Reorganization

B.   Liquidation Analysis

C.   Financial Projections

D.   Contract Assumption Schedule

E.   Contract Rejection Schedule

Note: To the extent that the foregoing Exhibits are not annexed to this Disclosure Statement, such Exhibits will be filed with the Bankruptcy Court in Plan Supplement(s) filed on or before the date(s) set for the filing of such documents and forms of documents.

WEST\222510024.1

**DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OF
REORGANIZATION FILED BY DEBTOR, ANGARAKA LIMITED PARTNERSHIP**

The Debtor submits this disclosure statement (the "<u>Disclosure Statement</u>") for the Plan of Reorganization (the "<u>Plan</u>") of Angaraka Limited Partnership pursuant to Bankruptcy Code section 1125, for use in the solicitation of votes on the Plan. A copy of the Plan is annexed hereto as <u>Exhibit A</u> of this Disclosure Statement. This Disclosure Statement and the other documents described herein are being furnished by the Debtors to their creditors and the holders of equity interests. Capitalized terms not defined herein shall have the meanings ascribed to the terms in the Plan.

This Disclosure Statement sets forth certain information regarding the Debtor's prepetition operating and financial history and the need to seek chapter 11 protection. This Disclosure Statement also describes terms and provisions of the Plan, certain effects of confirmation of the Plan, and the manner in which distributions will be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that holders of Claims entitled to vote under the Plan must follow for their votes to be counted.

Except as otherwise provided herein, capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to them in the Plan. Unless otherwise noted herein, all dollar amounts provided in this Disclosure Statement and in the Plan are given in United States Dollars.

The following introduction is qualified by the Plan and the more detailed information and financial statements contained elsewhere in this document.

**I.      INTRODUCTION**

The Debtor encourages you to vote to "accept" the Plan because it believes it provides the best chance to maximizing the recovery for all creditor constituents.

Your vote on the Plan is important. Absent acceptance of the Plan, the Debtor's Chapter 11 case would likely be converted to a Chapter 7 liquidation. The liquidation analysis, attached hereto as <u>Exhibit B</u>, shows that the Plan is more beneficial than a liquidation.

**A.      Description of Business**

In November 2005, the Debtor, a Texas limited partnership, acquired and assumed indebtedness secured by, among other things, a Deed of Trust on four, Class B/C, garden-apartment properties (the "<u>Properties</u>") located in the Dallas/Fort-Worth Metroplex. The Properties -- Woodchase, Clarendon, Keller Oaks, and Sycamore Hills -- total 750 units and range in date of construction from 1979 to 1983. Illustrated below is a summary of each Property's key characteristics:

|  | Sycamore Hill | Keller Oaks | Clarendon | Woodchase |
|---|---|---|---|---|
| **Location** | Fort Worth, TX | Carrollton, TX | Irving, TX | Irving, TX |
| **Number Of Units** | 264 | 220 | 192 | 74 |
| **Year of Construction** | 1983 | 1979 | 1981 | 1983 |
| **Current Occupancy** | 95% | 88% | 74% | 94% |

The Debtor's secured creditor is Bank of America, National Association, successor to Norwest Bank Minnesota, National Association, as Trustee and REMIC Administrator for the Registered Certificate holders of DLJ Commercial Mortgage Corp, Commercial Mortgage Pass-Through Certificates, Series 1999-CGI, acting by and through C-III Asset Management LLC (f/k/a Centerline Servicing LLC, which was f/k/a Centerline Servicing Inc., which was f/k/a ARCap Servicing, Inc., in its capacity as special servicer pursuant to that certain Pooling and Servicing Agreement dated March 1, 1999) ("C-III Asset Management" or "Lender"). When the debtor acquired the Properties, they were encumbered with a loan from the Lender in the original amount of $20,350,000. As of the Petition Date, the Debtor was indebted to Lender in the approximate amount of $17,000,000.00. The Debtor was also indebted to Lender for accruing interest, and other charges, (collectively, the "Secured Debt"). Illustrated below is a Property by Property break down of the Secured Debt.

|  | Sycamore Hill | Keller Oaks | Clarendon | Woodchase |
|---|---|---|---|---|
| **Original Loan Amount** | $6,210,476 | $7,167,501 | $4,561,137 | $2,410,887 |
| **Amortization** | 360 / Balloon | 360 / Balloon | 360 / Balloon | 360 / Balloon |
| **Current Interest Rate**[1] | 8.90% | 8.90% | 8.90% | 8.90% |
| **Maturity** | 11/01/2028 | 11/01/2028 | 11/01/2028 | 11/01/2028 |
| **Current Loan Balance**[2] | $5,265,059 | $6,076,397 | $3,866,799 | $2,043,879 |

In or around January of 2009, Buchanan Street Partners took over as Asset Manager for all of the Properties and employed Pacific West Property Management ("PWM") to serve as "on-site" Property Manager at each Property. Upon engagement, PWM completed an in-depth review of each Property. In the course of their review of the Properties, PWM discovered several problems with the Properties, including aesthetic and structural elements that had dilapidated to the point of failing to satisfy required building codes, and a lack of any rentable units due to delayed repairs or general neglect. Since January 2009, Debtor, along with their new property manager PWM, have sought to upgrade the Properties, focusing on the most pertinent items that required attention based on PWM's findings, particularly those mandatory to satisfy city code compliance issues and cure the life-safety items, as well as rehab the assets to be in revenue-generating condition.

---

[1] The Anticipated Repayment Date ("ARD") became effective November 1, 2008, triggering a 200 bps increase from 6.90% to 8.90% in the loan's effective interest rate.

[2] The allocations made hereunder are for illustrative purposes only and the Lender may not necessarily agree with the allocations or that the loan documents that define the relationship between the Debtor and the Lender require a release of the Lender's lien on any one property in return for payment of the amount listed by the Debtor in this chart.

2

At the same time, PWM also identified and sought to remedy several issues with the business management of the Properties. Specifically, PWM discovered that there was limited, if any, monitoring of account payables, the on-site management/support staff was poorly trained and required replacement, there were excessive and often unwarranted concessions being given to new tenants, and there was little to no marketing or advertising materials or activity promoting the Properties.

During 2009, the Debtor, with the help of PWM, had made significant progress with regards to completing some of the much needed repairs, renovations, and management reorganization of the Properties. Many of the completed repairs and renovations were required in order to satisfy city code compliance requirements and to meet basic standards of aesthetics. The Properties further risked being condemned by the city and becoming less marketable in attracting new tenants and retaining existing ones, and thus the need to complete them quickly was imperative. However the drain on cash-flow that such efforts had required compounded the Debtor's hardship in meeting its debt service requirements. Moreover, the market for older multifamily rental units, such as the Properties, in the areas in which the Properties are located saw a significant decline in 2009 as new units were built, exacerbating the Debtor's financial situation as tenants were more difficult to come by.

The costs of the repairs and renovations, the economic conditions, and the required debt service payments in 2009 had a significant impact on the Debtor's net operating income. Due to the increased financial burden of the Debtor brought upon it by the necessary repairs and management changes, and the negative economic conditions, the Debtor began defaulting on its secured debt obligations. Despite Debtor's best efforts to renegotiate its obligations with its Lender, Debtor was unable to reach terms with the Lender that would allow it to operate as a profitable enterprise. Debtor therefore had no other option than to file for bankruptcy protection on the Petition Date.

**B.**    **Cash Collateral**

The Debtor filed a motion to use cash collateral and providing adequate protection. On July 7, 2010, the Court signed a final order granting the Cash Collateral Motion ("Final Cash Collateral Order"). Under the terms of the Final Cash Collateral Order, Debtor agreed to use the cash collateral only for purposes set forth in the budget attached to the order.

Under the Final Cash Collateral Order, Debtor was required to provide Lender (as defined in the Final Cash Collateral Order), with a monthly accounting of receipts and expenditures of the Cash Collateral. Moreover, the Lender was granted a replacement lien and security interest in all of the Cash Collateral (as defined in the Final Cash Collateral Order).

As further adequate protection, the Lender was granted replacement liens in all other assets of the Debtor's estate to secure any amount equal to the sum of the aggregate diminution subsequent to the Petition Date, in the value of the Collateral subject to certain limitations. The Debtor was also required to make monthly installment payments to Lender equal to Debtor's excess cash from operations, beginning in August, 2010. The payments will be applied to Debtor's indebtedness to Lender as determined by the Court.

C.     **Pending Litigation**

1.     **Avoidance Actions**

The Debtor has not conducted a complete analysis of possible causes of action under Sections 547, 548, 549 and 550 of the Bankruptcy Code but will be conducting this analysis as they attempt to obtain confirmation of the Plan.  All avoidance actions are preserved under the Plan for the benefit of the Debtor's estate.

II.     **SUMMARY OF PLAN**

Capitalized terms not defined below shall have the meanings ascribed to such terms in the Plan.

A.     **Classification and Treatment of Claims and Interests Under the Plan**

Under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), only holders of claims and interests that are "impaired" are entitled to vote to accept or reject the Plan. The Bankruptcy Code further provides that a Class that is left unimpaired under the Plan is deemed to have accepted the Plan. The Bankruptcy Code also provides that a class that receives no distribution under the Plan is deemed to have rejected the Plan. To become effective, the Plan must be accepted by certain classes of claims and confirmed by the Bankruptcy Court. For a discussion of these matters, see Article IV - Statutory Requirements for confirmation of the Plan of Reorganization.

Certain Classes of Claims are impaired under the Plan and, accordingly, are entitled to vote on the Plan.  The Debtor is seeking votes to accept the Plan from holders of Claims in these Classes. Certain Classes of Interests will make a full recovery under the Plan and, therefore, are deemed to have approved the Plan.  For a description of the Classes of Claims and Interests and their treatment under the Plan, see Article III – The Plan of Reorganization.

Estimated Claim amounts for certain Classes are based upon a preliminary analysis by the Debtor and its professionals of the corporate records and capital structure of the Debtor. There can be no assurance that these estimated amounts are correct. The treatment of the Classes, set out in later sections of this Disclosure Statement, are possible only if the Plan is approved and the Debtor's estimate of the Claims is determined to be valid by the Bankruptcy Court. The timing of distributions under the Plan, if any, is subject to conditions and determinations described in later sections of this Disclosure Statement.

B.     **Summary of Confirmation Requirements**

Under the Bankruptcy Code, only classes of claims or equity interests that are "impaired" are entitled to vote to accept or reject the Plan.  The Bankruptcy Code requires, as a condition to confirmation of a consensual plan of reorganization, that each impaired class of claims or equity interests accepts the plan.  A class of creditors is deemed to accept a plan if the holders of at least two-thirds in dollar amount, and more than one-half in number, of those creditors that actually cast ballots, vote to accept such plan.  A class of equity interest holders is deemed to accept a plan if the holders of at least two-thirds in amount of the allowed equity interests that actually cast ballots vote to accept such plan of reorganization.

Any Claims arising from the rejection of executory contracts and unexpired leases are treated under the Bankruptcy Code as if they arose before the filing of the chapter 11 petition.

Any Claim or Interest in an impaired Class that is subject to a pending objection or is scheduled as unliquidated, disputed or contingent, is not entitled to vote unless the holder of such Claim or Interest has obtained an order of the Bankruptcy Court temporarily allowing the Claim or Interest for the purpose of voting on the Plan.

### C.  Voting Instructions and Deadline

The Debtor has prepared this Disclosure Statement as required by Bankruptcy Code section 1125 and Bankruptcy Rule 3016(c).  It is being distributed to holders of Claims against the Debtor to assist such holders in evaluating the feasibility of the Plan, the manner in which their Claims are treated and in determining that the Plan satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129.  A copy of the Plan is attached to this Disclosure Statement as Exhibit A.  The purpose of this Disclosure Statement is to assist those entitled to vote on the Plan to make an informed judgment in voting to accept or reject the Plan.

This Disclosure Statement describes the background of the Debtor and the significant events leading up to and following the filing of the Chapter 11 case on the Petition Date.  It summarizes the major events that have taken place during the Debtor's Chapter 11 Case and describes the Plan, which divides creditor Claims and equity Interests into Classes and provides for the treatment of Allowed Claims and Interests.

#### 1.  Solicitation Process

Holders of Solicited Claims will be solicited for their acceptance or rejection of the Plan (the "Solicitation Period").  In the event that any class of Solicited Claims fails to accept the Plan, the Debtor reserves the right to seek confirmation of the Plan pursuant to section 1129(b)(1) of the Bankruptcy Code, commonly known as the "cramdown" provision.

#### 2.  General Information

Under the Bankruptcy Code, certain Classes of Creditors are deemed to accept or reject the Plan and the vote of these Classes will not be solicited.

##### a.  Unimpaired Classes Are Deemed to Accept the Plan and Do Not Vote

If a Creditor holds Claims included within a Class that is not impaired under the Plan, under Bankruptcy Code section 1126(f), the Creditor is deemed to have accepted the Plan with respect to such Claims and its vote of such Claims will not be solicited.

#### 3.  Claims Which Are Subject To A Pending Objection

The Bankruptcy Code provides that only the holders of Allowed Claims are entitled to vote on the Plan.  A Claim to which an objection has been filed (if such objection is filed at least thirty (30) days in advance of the Confirmation Hearing (defined below)) (a "Pending

Objection") is not an Allowed Claim unless and until the Bankruptcy Court rules on the Pending Objection and allows the Claim. If an objection to a claim is not filed at least thirty (30) days in advance of the Confirmation Hearing, the Claim shall be allowed for voting purposes unless otherwise ordered by the Court.

If the Bankruptcy Court has not ruled on the Pending Objection, but the holder of a Claim wishes to vote, the holder of the Claim may petition the Bankruptcy Court to estimate its claim for voting purposes under Bankruptcy Rule 3018(a). Consequently, although holders of Claims subject to a Pending Objection will receive ballots, their votes will not be counted unless the Bankruptcy Court, prior to the hearing on Confirmation, rules on the Pending Objection and allows the Claim or, on proper request under Bankruptcy Rule 3018(a) prior to the hearing on Confirmation, temporarily allows the Claim in an amount which the Bankruptcy Court deems proper for the purpose of voting on the Plan.

This provision only impacts voting, and does not impact allowance or distribution on account of Claims. No provision of this Disclosure Statement shall impair the right of the Debtors or any party in interest to object to a Claim for any reason, either before or after the Confirmation Hearing.

    4.    <u>Voting and Record Date</u>

If a Creditor holds a Claim classified in a voting Class of Claims under the Plan, the Creditor's acceptance or rejection of the Plan is important and must be in writing and filed on time.

    a.    How to Vote. IN ORDER FOR A VOTE TO BE COUNTED, THE BALLOT MUST BE PROPERLY COMPLETED AS SET FORTH ABOVE AND IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT, AND RECEIVED NOT LATER THAN **[_____, AT 5 P.M.]** PREVAILING CENTRAL TIME (THE "VOTING DEADLINE") BY THE BALLOTING AGENT AS SET FORTH ON THE BALLOT.

    b.    Ballots. Creditors must use only the ballot or ballots sent to them with this Disclosure Statement. If a Creditor has Claims in more than one Class, it should receive multiple ballots. IF A CREDITOR RECEIVES MORE THAN ONE BALLOT THE CREDITOR SHOULD ASSUME THAT EACH BALLOT IS FOR A SEPARATE CLAIM AND SHOULD COMPLETE AND RETURN ALL OF THEM.

**IF A CREDITOR IS A MEMBER OF A VOTING CLASS AND DID NOT RECEIVE A BALLOT FOR SUCH CLASS, OR IF SUCH BALLOT IS DAMAGED OR LOST, OR IF A CREDITOR HAS ANY QUESTIONS CONCERNING VOTING PROCEDURES, CALL VINCENT SLUSHER AT (214) 743-4572 DURING PREVAILING CENTRAL TIME BUSINESS HOURS.**

If a Creditor or Interest holder has any questions about the procedure for voting its Claim or the packet of materials that it received, please contact:

> Vincent Slusher
> DLA Piper LLP (US)
> 1717 Main St., Suite 4600
> Dallas, TX 75201
> Tel:  (214) 743-4572
> Email:  vince.slusher@dlapiper.com

## D.      The Confirmation Hearing

The Bankruptcy Court has set _____, 20__ as the date for a hearing on confirmation of the Plan (the "Confirmation Hearing").  All holders will have an opportunity to object to the Plan, if such holder has not waived such right.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on all Claim and Interest holders regardless of whether an individual Claim or Interest holder has supported or opposed the Plan.

## E.      Definitions

**Defined Terms**  As used in this Disclosure Statement, terms defined in the Plan annexed hereto and not otherwise specifically defined herein will have the meanings attributed to them in the Plan.

**Interpretation of Terms**  Each definition in the Disclosure Statement and in the Plan includes both the singular and the plural, and references in the Disclosure Statement include the masculine and feminine where appropriate.  Headings are for convenience or reference and shall not affect the meaning or interpretation of the Disclosure Statement.

## III.     THE PLAN OF REORGANIZATION

THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE, CLASSIFICATION, TREATMENT AND IMPLEMENTATION OF THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A. IN THE  EVENT OF ANY INCONSISTENCY BETWEEN THE DISCLOSURE STATEMENT AND THE PLAN, THE PLAN SHALL GOVERN.

### A.      Classification and Treatment of Claims and Interests Under the Plan

The Claims against the Debtor are divided into Classes, according to their seniority and other criteria.  The Classes of Claims and Interests in the Debtor, and the funds and other property to be distributed under the Plan, are described below.

THE DEBTOR BELIEVES THAT THE PLAN AFFORDS CREDITORS THE POTENTIAL FOR THE GREATEST REALIZATION OF THE VALUE OF THE ASSETS OF THE DEBTOR.

### B. Treatment of Administrative Claims and Priority Tax Claims

Certain Claims need not be classified under a plan pursuant to the Bankruptcy Code, including Administrative, DIP Lender, Fee, and Priority Tax Claims.

#### 1. Administrative Claims

The Plan defines Administrative Claims as (i) arising on or after the Commencement Date and prior to the Effective Date for a cost or expense of administration of the Chapter 11 Case, that is entitled to priority or superpriority pursuant to sections 364(c)(1), 503(b), or 507(a)(2) of the Bankruptcy Code, including DIP Financing Claims, Fee Claims and actual and necessary costs and expenses incurred after the Commencement Date of preserving the Estate and operating the business of the Debtor or (ii) entitled to priority under section 503(b)(9) of the Bankruptcy Code.

The Plan provides that unless such holder agrees to a different treatment, or unless an order of the Bankruptcy Court provides otherwise, on the Distribution Date, each holder of an Allowed Administrative Claim shall, in full and complete settlement, satisfaction, and discharge of such Claim, receive Cash in an amount equal to such Allowed Administrative Claim, *provided, however*, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtor shall be paid in full in the ordinary course of business by the Debtor or the Reorganized Debtor, in accordance with the terms and subject to the conditions of any agreements governing such ordinary course liabilities.

#### 2. Fee Claims

With respect to Fee Claims for professionals, all entities seeking allowance by the Bankruptcy Court of a Fee Claim shall prepare final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date, and shall file and serve such applications no later than the date that is sixty (60) days after the Effective Date. The failure to timely file such application shall result in the Fee Claim being forever barred and discharged. Objections to a Fee Claim must be filed and served no later than twenty (20) days after service of the application seeking allowance of such Fee Claim. As soon as practicable (but no later than 5 Business Days) after a Final Order by the Bankruptcy Court allowing a Fee Claim, the Disbursing Agent shall pay the holder thereof Cash in the unpaid Allowed amount of such claim.

The Debtor is paying all of their post-petition creditors in the ordinary course, and therefore believe that the only administrative claims will be Fee Claims. The Debtor is unable to estimate the amount of Fee Claims at this time but note that all Fee Claims must be approved by order of the Court.

#### 3. Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall, in full and complete settlement, satisfaction, and discharge of such Claim, receive, at the option of the Reorganized Debtor, (i) the amount of such holder's Allowed Priority Tax Claim, plus interest on the unpaid amount of such Claim from the Effective Date at the rate applicable under non-bankruptcy law, in

quarterly Cash installment payments over a period of five years from the Effective Date (provided that the Reorganized Debtor may prepay the balance of any such Allowed Priority Tax Claim at any time without premium or penalty); (ii) Cash on the Distribution Date in the amount equal to the Allowed Priority Tax Claim; or (iii) such other treatment as may be agreed upon in writing by such holder and the Debtor or Reorganized Debtor. Notwithstanding the foregoing, the holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim. Any such Claim or demand for any such penalty (a) will be discharged under the Plan and (b) the holder of an Allowed Priority Tax Claim shall be barred from collecting or attempting to collect such penalty from the Reorganized Debtor or their property.

## C. Treatment of Classified Claims and Interests

The Plan provides for certain Claims and Interests by Class, as provided in Bankruptcy Code sections 1122 and 1123(a)(1). The Classes established by the Plan, and the treatment of each Class, are set forth below. The Plan provides for certain general treatment provisions which, in addition to other generally applicable provisions (including distribution provisions described in a later section of this Disclosure Statement), apply to the treatment of all Claims under the Plan.

The classes are as follows:

(a) Class 1 – Lender Claims. Commencing on the Distribution Date, Lender shall, in full and complete settlement and satisfaction of its Claim, receive a note in the amount due on the Petition Date after application of the escrows held by the Lender, payable over twenty-four (24) months from the Distribution Date, and bearing interest at a rate of 4.35% per year. Reorganized Debtor shall make monthly payments on the note equal to its excess cash flow (defined as income less operating expenses less replacement reserves of $300 per unit per year less operating/working capital reserves of $200 per unit per year). The monthly payments shall first be applied to interest, with any remainder being applied to principal. All outstanding principal and interest shall be due and payable at the end of the twenty-four (24) month term provided however that the Reorganized Debtor shall have the ability to liquidate one or more of the Properties prior to the end of the twenty-four (24) month term, and upon doing so, shall be required to remit to Lender a minimum of seventy percent (70%) of the net proceeds from such sale to be applied to the principal balance outstanding on the note. Reorganized Debtor may retain up to thirty percent (30%) of the net proceeds of such sale, to be used solely for the purpose of improving the remaining Properties through deferred maintenance and capital improvement rehabilitation projects. Lender will retain all of its liens to the same extent, validity and priority as existed pre-petition except as modified in this Plan. Class 1 is impaired under the Plan. Each holder of an Allowed Class 1 Claim is entitled to vote to accept or reject the Plan.

(b) Class 2 – Other Secured Claims. Commencing on the Distribution Date, each holder of an Allowed Other Secured Claim, shall, in full and complete settlement

and satisfaction of such Claim, receive (i) payments under the same terms and conditions as existed between the Debtor and such holder prior to the Commencement Date (provided that the Reorganized Debtor may prepay the balance of any such Allowed Other Secured Claim at any time without premium or penalty); (ii) such other treatment as may be agreed upon in writing by such holder and Debtor or Reorganized Debtor; or (iii) the Collateral securing such Allowed Other Secured Claim. Class 2 is impaired under the Plan. Each holder of an Allowed Class 2 Claim is entitled to vote to accept or reject the Plan.

(c)     Class 3 –Unsecured Claims. Each holder of an Allowed Unsecured Claim shall, in full and complete settlement, satisfaction, and discharge of such Claim, receive over a period of six months from the Effective Date, two equal payments payable on each Quarterly Distribution Date until such Claim is paid in full. Class 3 is impaired under the Plan, and each holder of an Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

(d)     Class 4 – Old Equity Interests. On the Effective Date, each and every Old Equity Interest shall be cancelled and the holder thereof shall receive equity interests in the Reorganized Debtor equal to such holder's Old Equity Interest. Class 4 is not impaired under the Plan.

## D.     **Funding of the Plan**

The Debtor intend to implement the Plan with funds generated from operation of its business.

## E.     **Implementation of the Plan**

1.     Corporate Existence. On the Effective Date:

(a)     The Reorganized Debtor shall continue to exist as a separate legal entity, and shall be a limited liability company reconstituted under the laws of the State of Texas, with all limited partnership powers in accordance with applicable laws.

(b)     Reorganized Debtor shall exist and operate pursuant to the Reorganized Debtor Partnership Agreement.

2.     Compliance With Section 1123(a)(6) of the Bankruptcy Code. The New Enabling Documents shall contain provisions necessary to prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such certificates of incorporation and bylaws (or, if applicable, certificates of formation and the operating agreements) as permitted by applicable law.

3.     Corporate Action To Facilitate Consummation of the Plan. After the Confirmation Order is entered, and subject to the subsequent occurrence of the Effective Date, all matters provided for under the Plan that would otherwise require action by the partners or directors of the Debtor or the Reorganized Debtor, shall occur in accordance with the Plan and the Confirmation Order.

4.      Corporate Governance and Management of the Reorganized Debtor.   On the Effective Date, the management, control, and operation of the Reorganized Debtor shall become the general responsibility of the general partner of the Reorganized Debtor.  Thereafter, the terms and manner of selection of management of the Reorganized Debtor will be subject to the terms of the New Enabling Documents, as the same may be amended from time to time according to their terms, and applicable law.

5.      Transactions on the Effective Date.   On the Effective Date, unless otherwise provided by the Confirmation Order, the following shall occur, shall be deemed to occur simultaneously, and shall constitute substantial consummation of the Plan:

(a)      The Reorganized Debtor Partnership Agreement, and any plan of merger or conversion by which the Debtor may be reconstituted into the Reorganized Debtor, shall be authorized, approved, and effective in all respects without further action under applicable law, regulation, order, or rule, including any action by the Old Equity Interest holders or directors of the Debtor or the Reorganized Debtor. Immediately prior to or on the Effective Date, such documents shall be filed with the Secretary of State of Texas and/or any other necessary filing office.

(b)      The property to be retained by and/or transferred under the Plan to the Reorganized Debtor shall automatically be vested in such retainee or transferee without further action on the part of the Debtor or Reorganized Debtor.

(c)      All Causes of Action belonging to the Debtor on the Effective Date shall vest in the Reorganized Debtor.

(d)      The equity interests of the Reorganized Debtor shall become effective pursuant to the relevant provisions of the New Enabling Documents in all respects without further action under applicable law, regulation, order, or rule, including any action by the Old Equity Interest holders or directors of the Debtor or the Reorganized Debtor.

(e)      All Plan Documents shall be executed, delivered, and become binding in all respects, on the Reorganized Debtor and each and every counterparty.

6.      Securities Exemptions.   Any form of new equity interests in the Reorganized Debtor issued pursuant to the Plan shall be exempt from registration under the Securities Act of 1933, as amended, pursuant to section 1145 of the Bankruptcy Code to the extent permitted thereby.

**F.      Risk Factors in Connection with the Plan**

The Debtor believes that there are certain risk factors in connection with confirmation of the Plan including, the level of Allowed Claims and Allowed Administrative Claims may exceed the Debtor's estimates.

**G.    Provisions Governing Distributions**

1.    <u>Distributions Under the Plan</u>.    The Plan provides the following with respect to distributions to Claim holders:

(a)    Disbursing Agent.

(i)    The disbursing agent for distributions on account of Claims in all Classes shall be the Reorganized Debtor or its designee acting in such capacity (when acting in such capacity, the "<u>Disbursing Agent</u>").

(ii)    The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court; in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtor.

(b)    <u>Distributions for Claims Allowed as of the Effective Date</u>.    Except as otherwise provided, distributions of Cash to be made on the Effective Date to holders of Claims as provided by Article II that are Allowed as of the Effective Date shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than (1) 30 days after the Effective Date or (2) such later date when the applicable conditions of this Article are satisfied.    Distributions on account of Claims Allowed after the Effective Date will be made pursuant to Section 6.2 of the Plan.

(c)    <u>Cancellation of Existing Securities and Agreements</u>.    On the Effective Date, the promissory notes, share certificates, bonds and other instruments evidencing any Claim or Old Equity Interest shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order or rule, and the obligations of the Debtors under the agreements, indentures and certificates of designations governing such Claims and Old Equity Interests, as the case may be, shall be discharged.

2.    <u>Resolution of Disputed Claims.</u>

(a)    <u>Objections to and Settlement of Claims</u>.

(i)    The Debtor (prior to the Effective Date) and the Reorganized Debtor (on and after the Effective Date) shall bear the responsibility and cost of administering and closing the Chapter 11 Case, including the duties typically associated with a debtor's claims administration.    On and after the Effective Date, the Reorganized Debtor shall have the exclusive right and authority to make and file objections to Claims.

(ii)    On and after the Effective Date, the Reorganized Debtor, shall be entitled to compromise, settle, otherwise resolve, or withdraw any objections to Claims, and compromise, settle, or otherwise resolve Disputed Claims without further order of the Bankruptcy Court.

(iii)    Unless otherwise ordered by the Bankruptcy Court, all objections to Claims that are the subject of proofs of claim or requests for payment filed with the Bankruptcy Court (other than applications for allowance of Fee Claims) shall be filed and served upon the holder of the Claim as to which the objection is made on or prior to the Claims Objection Deadline.

(b)    Tax Matters.

(i)    In connection with the Plan, to the extent applicable, the Disbursing Agent will comply with all applicable Tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan will be subject to applicable withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent will be authorized to take any actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including requiring recipients to fund the payment of such withholding as a condition to delivery, liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding Taxes, or establishing any other mechanism the Disbursing Agent believes are reasonable and appropriate including requiring Claim holders to submit appropriate Tax and withholding certifications.

(ii)    Notwithstanding any other provision of the Plan, each entity or person receiving a distribution of any consideration pursuant to the Plan will have sole and exclusive responsibility for the determination of the tax consequences to such entity or person and for the satisfaction and payment of any Tax obligations imposed on such entity or person on account of the distribution, including income, withholding, and other Tax obligations.

(e)    Delivery of Distributions.    Subject to Bankruptcy Rule 9010 and except as otherwise set forth in the Plan, all distributions under the Plan shall be made to the holder of each Allowed Claim at the address of such holder as listed on the Schedules as of the Record Date, unless the Debtor or, on and after the Effective Date, the Reorganized Debtor, shall have been notified in writing of a change of address, including by the filing of a timely proof of claim by such holder that provides an address for such holder different from the address reflected on the Schedules.  Subject to the provisions herein specifically governing unclaimed distributions, in the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest.

(f)    Distributions of Cash.    Any distribution of Cash under the Plan shall, at the Disbursing Agent's option, be made by check drawn on a domestic bank or wire transfer.

(g)    Timing of Distributions.    Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(h)    <u>Minimum Distributions</u>.  No payment of Cash less than $25 shall be made by the Disbursing Agent to any holder of a Claim unless a request therefor is made in writing to the Disbursing Agent no later than 30 days after the Effective Date.

(i)    <u>Unclaimed Distributions</u>.  All distributions under the Plan that are unclaimed for a period of one (1) year after distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Reorganized Debtor, as applicable, and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

(j)    <u>Time Bar to Cash Payments</u>.  Checks issued by a Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred eighty (180) days after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim to whom such check originally was issued.  Any Claim with respect to such a voided check shall be made on or before two hundred seventy (270) days after the date of issuance of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

(k)    <u>Distributions to Holders as of the Record Date</u>.  As of the close of business on the Record Date for distributions under the Plan, the claims register shall be closed, and there shall be no further changes in the record holder of any Claim.  The Disbursing Agent shall have no obligation to recognize any transfer of any Claim occurring after the Record Date, and shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register as of the close of business on the Record Date for distributions under the Plan.

(l)    <u>Allocation Between Principal and Accrued Interest</u>. To the extent applicable, all distributions to a holder of an Allowed Claim will apply first to the principal amount of such Claim until such principal amount is paid in full and then to any interest accrued on such Claim.

(m)    <u>Distribution Efficiency</u>.  Notwithstanding anything to the contrary in the preceding paragraph, the Disbursing Agent shall not be required to make any distribution on any Quarterly Distribution Date if the Disbursing Agent determines, in its sole and absolute discretion, that making such distribution would not be cost efficient.  Any distribution to a holder of a Claim that has not been made shall be retained for distribution on the next Quarterly Distribution Date for which such distribution is cost-efficient, or such time as all Claims have been allowed or disallowed.

(n)    <u>Estimation of Claims</u>.  The Reorganized Debtor may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether any party previously objected to such Claim or whether the Bankruptcy Court has ruled on such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and

subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

(o)    <u>Special Rules for Distributions to Holders of Disputed Claims</u>. Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the Reorganized Debtor, the Reorganized Debtor shall not be required to (a) make any partial payments or partial distributions to a person, estate or trust with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order or (b) make any distributions on account of an Allowed Claim of any person, estate or trust that holds both an Allowed Claim and a Disputed Claim, unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Claims have been Allowed.

(p)    <u>Litigation Claims</u>.  Any Litigation Claim that has been determined and liquidated shall be deemed an Allowed Claim only to the extent that the holder of such Claim can establish that such Claim is not recoverable from third parties through the Debtor's insurance coverage.

(q)    <u>Nonpayment of Claims of Parties Holding Recoverable Property; Setoff</u>.

(i)    Notwithstanding any other provisions of the Plan, no payments or distributions will made on account of any Claims of holders from which property is recoverable or alleged to be recoverable pursuant to section 542, 543, 550, or 553 of the Bankruptcy Code or from entities that are or are alleged to be a transferee of a transfer avoidable under section 544, 545, 547, 548, or 549 of the Bankruptcy Code until (A) the holder has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 542, 543, 550 or 553 of the Bankruptcy Code or (B) the Bankruptcy Court determines by Final Order that the holder need not pay the amount, or turn over such property.

(ii)    Subject to the provisions of section 553 of the Bankruptcy Code, in the event that the Debtor has a Cause of Action of any nature whatsoever against the holder of a Claim, the Debtor may, but is not required to, setoff against the Claim (and any payments or other distributions to be made in respect of such Claim in the Plan) the Debtor's Cause of Action against the holder.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any Cause of Action that a Debtor has against the holder of a Claim.

**H.**    **<u>Miscellaneous Matters</u>**

1.    <u>U.S. Trustee Fees</u>

All fees then payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the Effective Date.  After the Effective Date and until the Chapter 11 Case is closed, converted, or dismissed, the Reorganized Debtor shall pay fees pursuant to section 1930 of title 28 of the United States Code as they become due.

2. Exemption from Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of New Angaraka Interests under the Plan, the creation of any mortgage, deed of trust, lien or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any merger or conversion agreements or agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any of the forgoing or pursuant to the Plan, shall not be subject to any stamp Tax, real estate transfer Tax, mortgage recording Tax, sales or use Tax, or other similar Tax. All sale transactions consummated by the Debtor and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including the sale by the Debtor of owned property pursuant to section 363(b) of the Bankruptcy Code and the assumption, assignment and sale by the Debtor of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be subject to any stamp Tax, real estate transfer Tax, mortgage recording Tax, sales or use Tax, or other similar Tax.

3. Bar Date for Certain Claims

The Plan provides for a "Bar Date," or the date by which certain Claims must be filed against the Debtor. Bar Date means, as applicable: (a) the date set by an order of the Bankruptcy Court as the applicable deadline for the filing of a proof of Claim, or requests for payment of Administrative Claims, or (b) with reference to the assumption of an executory contract or unexpired lease by the Debtor, the date set by an order of the Bankruptcy Court as the applicable deadline for objecting to such assumption or Cure Amount proposed by the Debtor.

4. Bar Date for Fee Claims

All entities seeking allowance by the Bankruptcy Court of a Fee Claim shall prepare final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date, and shall file and serve such applications no later than the date that is sixty (60) days after the Effective Date. The failure to timely file such application shall result in the Fee Claim being forever barred and discharged.

5. Effectuating Documentation

Effectuating Documents and Further Transactions. The Debtor and the Reorganized Debtor are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan.

6. Injunctions

The Plan also provides that, on the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, all entities who have been, are, or may be holders of Causes of Action against the Debtor shall be enjoined from taking any of the following actions against or

affecting the Debtor, the Reorganized Debtor, or their property with respect to such Causes of Action (other than actions brought to enforce any rights or obligations under the Plan and appeals, if any, from the Confirmation Order):

(a)  commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against the Debtor, the Reorganized Debtor, or their property, or any direct or indirect successor in interest to the Debtor or any assets or property of such transferee or successor (including all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

(b)  enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Debtor, the Reorganized Debtor, or their property, or any direct or indirect successor in interest to the Debtor or any assets or property of such transferee or successor;

(c)  creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any lien against the Debtor, the Reorganized Debtor, or their property, or any direct or indirect successor in interest to the Debtor or any assets or property of such transferee or successors, or other than as contemplated by the Plan;

(d)  except as otherwise provided in the Plan and Plan Documents, asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly against any obligation due the Debtor, the Reorganized Debtor, or their property, or any direct or indirect successor in interest to a Debtor or any assets or property of such transferee or successor; and

(e)  proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

7.  Post-Confirmation Employment and Payment of Professionals

From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred by the Reorganized Debtor, including those fees and expenses incurred in connection with the implementation and consummation of the Plan.

8.  Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case and this Plan (except in the case of the New Enabling Documents, which shall be subject, to the jurisdiction set forth in the definitive documentation thereof) to the fullest extent legally permissible, including but not limited to jurisdiction to:

(a)  Hear and determine pending applications (including pursuant to the Plan) for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Cure Amounts and Claims resulting therefrom.

(b)     Hear and determine any and all adversary proceedings, applications, and contested matters in the Chapter 11 Case, whether pending on the Confirmation Date or commenced thereafter.

(c)     Hear and determine any objection to, or estimation of, Claims.

(d)     Enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated.

(e)     Consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court entered in the Chapter 11 Case, including the Confirmation Order.

(f)     Hear and determine all applications with respect to Fee Claims.

(g)     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and Confirmation Order including any and all disputes arising in connection with the interpretation, implementation or enforcement of the discharge, release and injunction provisions contained in the Plan, and issue such orders as are necessary to aid in the implementation of the Plan.

(h)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan or Confirmation Order.

(i)     Recover all assets of the Debtor and property of the Debtor's Estate, wherever located.

(j)     Hear and determine matters concerning Taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

(k)     Hear any other matter not inconsistent with the Bankruptcy Court's jurisdiction.

(l)     Enter a final decree closing the Chapter 11 Case as contemplated by Bankruptcy Rule 3022.

### 9.     Modification of Plan

(a)     Any alterations, amendments, or modifications of or to the Plan may be made in writing by the Debtor at any time prior to the Confirmation Date provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.

(b)     Any alterations, amendments, or modifications of or to the Plan may be made in writing by the Debtor at any time after the Confirmation Date and before substantial consummation of the Plan provided that (i) the Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and (ii) the Bankruptcy

Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code.

(c) A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

10. Severability

If the Bankruptcy Court determines that any provision of the Plan would be unenforceable or would prevent the Plan from being confirmed, either on its face or as applied to any Claim or Old Equity Interest or transaction, the Debtor may modify the Plan so that such provision shall not be applicable to the holder of any Claim or Old Equity Interest or in such manner as will allow the Plan to be confirmed. Such a determination by the Bankruptcy Court and modification by the Debtor shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan, or (b) require the re-solicitation of any acceptance or rejection of the Plan.

11. Binding Effect

The Plan shall be binding upon and inure to the benefit of the Reorganized Debtor, the holders of all Claims and Old Equity Interests, and their respective successors and assigns, including the Reorganized Debtor.

## I. Conditions for Confirmation of the Plan

1. Conditions to Confirmation. The following are conditions to the confirmation of the Plan:

(a) The Confirmation Order shall be in form and substance satisfactory to the Debtor.

(b) There has been no occurrence of any event, development or circumstance, which has had, or could reasonably be expected to have, in the reasonable judgment of the Debtor, a material adverse effect on and/or a material adverse change in the business operations, results of operation, properties, assets, liabilities, condition (financial or otherwise) or prospects of the Debtor taken as a whole from the Commencement Date.

(c) All schedules and other attachments to the Plan shall be in form and substance acceptable to the Debtor.

2. Conditions to Effective Date

The following are conditions to the occurrence of the Effective Date:

(a) The Confirmation Order, in form and substance acceptable to the Debtor shall have become a Final Order.

(b)     The Plan Documents shall have been executed and delivered by the parties thereto with only such changes made after filing the Plan Documents with the Bankruptcy Court as are acceptable to the Debtor, and all conditions precedent (other than the occurrence of the Effective Date) to the effectiveness of such agreements shall have been satisfied or waived, in each case in accordance with the terms of such agreements.

(c)     The Debtor shall have received all authorizations, consents, regulatory approvals, rulings, letters, no action letters, opinions or documents that are determined by the Debtor to be necessary to implement the Plan.

(d)     No stay of the Confirmation Order shall then be in effect.

(e)     The Plan shall not have been materially amended, altered or modified from the Plan confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with Section 8.5 of the Plan.

> 3.     <u>Waiver</u>

The conditions to confirmation and the conditions to effectiveness may be waived by the Debtor.

**J.     <u>Treatment Of Executory Contracts And Unexpired Leases</u>**

> 1.     <u>Rejection of Executory Contracts and Unexpired Leases</u>

(a)     Upon the occurrence of the Effective Date, each and every executory contract and unexpired lease to which a Debtor is a party that is not listed on the Contract Assumption Schedule (including all such agreements listed in the Contract Rejection Schedule) shall be rejected pursuant to section 365 of the Bankruptcy Code.  The Confirmation Order shall constitute the Bankruptcy Court's approval of such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code and findings by the Bankruptcy Court that the requirements of section 365 of the Bankruptcy Code have been satisfied with respect to each rejected executory contract or lease.

(b)     If the rejection of an executory contract or unexpired lease pursuant to the Plan gives rise to a Claim against the Debtor or its Estate, such Claim will be forever barred and will not be enforceable against the Debtor, the Reorganized Debtor, their respective successors, or their respective properties unless a proof of such claim is filed with the Bankruptcy Court no later than twenty (20) days after the Confirmation Date.

(c)     To the extent that any rejected executory contract or unexpired lease by its terms provides any entity other than the Debtor or Reorganized Debtor with any options upon "termination", such options shall not be enforceable as a result of the rejection of such executory contract or unexpired lease.  In addition rejection of any executory contract or unexpired lease shall not affect any rights of the Debtor or Reorganized Debtor that arise upon termination pursuant to the terms of such executory contract or unexpired lease.

2.    <u>Assumption of Executory Contracts and Unexpired Leases If Not Rejected.</u>

(a)    Upon the occurrence of the Effective Date, each and every executory contract and unexpired lease listed on the Contract Assumption Schedule, shall be assumed pursuant to section 365 of the Bankruptcy Code, *provided, however*, that the Debtor shall be entitled at any time prior to the tenth (10th) day before the Confirmation Hearing to add or delete executory contracts and unexpired leases on the Contract Assumption Schedule and/or the Contract Rejection Schedule, and *provided, further*, that the Debtor and Reorganized Debtor shall be entitled to file a motion after the Confirmation Date to reject any executory contract or unexpired lease for which an objection to a Cure Amount proposed by the Debtor has been timely filed, if the Debtor or Reorganized Debtor determine in their discretion, that in light of the Cure Amount asserted by the non-debtor party or in light of the Bankruptcy Court fixing a Cure Amount that is materially higher than the Cure Amount anticipated by the Debtor, assumption of such executory contract or unexpired lease is not in the best interests of the Debtor or Reorganized Debtor. The Confirmation Order shall constitute the Bankruptcy Court's approval of such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code and findings by the Bankruptcy Court that the requirements of section 365 of the Bankruptcy Code have been satisfied with respect to each assumed executory contract or lease and that such assumed executory contracts or leases shall inure to the benefit of the Reorganized Debtor.

(b)    <u>Notice of Assumption and Proposed Cure.</u>  Service of the Disclosure Statement on the parties listed on the Contract Assumption Schedule shall constitute notice of the assumption and assignment of contracts and the proposed Cure Amount. Any party listed on the Contract Assumption Schedule may object to the proposed assumption and/or the proposed cure prior to the fifth (5th) day before the Confirmation Hearing. In the event a party objects to the proposed cure amount (a "<u>Cure Objection</u>"), and is a party to a contract to be assumed, such Cure Objection shall not prevent or delay confirmation of the Plan. Instead, the cure amount asserted by the objecting party shall be placed into escrow, pending ruling by the Court on the Cure Objection or by agreement of the parties.

(c)    To the extent that the parties to executory contracts and unexpired leases listed on the Contract Assumption Schedule and Debtor have agreed prior to the Effective Date to modifications of such agreements as a condition for such assumption, such executory contracts and unexpired leases shall be deemed assumed as modified.

(d)    Any objection to the assumption of an executory contract or unexpired lease by the Debtor shall be forever barred and will not be enforceable against the Debtor, the Reorganized Debtor, their respective successors, or their respective properties unless such objection is filed and served on the Debtor, and any other party required to be served pursuant to an order of the Bankruptcy Court, no later than the Confirmation Date.

(e)    Unless compromised, settled, or otherwise resolved pursuant to a Final Order of the Bankruptcy Court or the authority granted to the Debtor or Reorganized Debtor under the Plan, the Cure Amount to be paid in connection with the assumption of an executory contract or unexpired lease that is identified on the Contract Assumption Schedule shall be the proposed Cure Amount listed on such schedule.

3.      Contract Assumption Schedule.

Unless otherwise provided, each executory contract or unexpired lease listed or to be listed on the Contract Assumption Schedule shall include (a) any modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other documents that in any manner affects such contract or lease, irrespective of whether such agreement, instrument or other document is listed on the Contract Assumption Schedule; and (b) with respect to such executory contracts and unexpired leases that relate to the use or occupancy of real property, all executory contracts or unexpired leases appurtenant to the premises listed on the Contract Assumption Schedule including, all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem relating to such premises to the extent any of the foregoing are executory contracts or unexpired leases that have not been previously assumed by the Debtor. Listing a contract or lease on the Contract Assumption Schedule does not constitute an admission by the Debtor or Reorganized Debtor that the Debtor or Reorganized Debtor has any liability thereunder, or that such contract or lease is executory.

4.      Contracts and Leases Entered into or Assumed After the Commencement Date.

Contracts and leases entered into after the Commencement Date by the Debtor, and any executory contracts and unexpired leases assumed by the Debtor prior to confirmation of the Plan, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business and will survive and remain unaffected by entry of the Confirmation Order.

5.      Obligations to Indemnify Directors, Officers and Employees.

The obligations, if any, of the Debtor or Reorganized Debtor to indemnify any Indemnitee on or after the Commencement Date (by reason of such person's prior or future service in such capacity or as a director, officer, or employee on behalf of the Debtor, to the extent provided in the applicable certificates of incorporation, bylaws or similar constituent documents, by statutory law or by written agreement, policies or procedures of or with the Debtor or Reorganized Debtor) will (i) be deemed and treated as arising pursuant to executory contracts that are assumed by the Debtor or Reorganized Debtor pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date and (ii) survive and be unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Commencement Date.  Notwithstanding anything else in the Plan to the contrary, the obligations of the Debtor to indemnify any Person who immediately prior to the Effective Date no longer was a director, officer, or employee of a Debtor, shall terminate and be discharged pursuant to section 502(e) of the Bankruptcy Code or otherwise, as of the Effective Date.

## IV.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN OF REORGANIZATION

The Plan must be approved by the Bankruptcy Court after a confirmation hearing.

### A.  Elements of Confirmation

In order for the Plan to be confirmed, the Bankruptcy Code requires that the Bankruptcy Court determine that the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code and that the disclosures concerning the Plan have been adequate and have included information concerning all payments made or promised in connection with the Plan and the cases.  The Bankruptcy Code also requires that: (1) the Plan be accepted by the requisite votes of Creditors, except to the extent that confirmation despite dissent is available under Bankruptcy Code section 1129(b); (2) the Plan is feasible (that is, there is a reasonable probability that the Debtor will be able to perform their obligations under the Plan without needing further financial reorganization not contemplated by the Plan); and (3) the Plan is in the "best interests" of all Creditors and equity security holders (that is, Creditors and equity security holders will receive at least as much under the Plan as they would receive in a hypothetical liquidation case under chapter 7 of the Bankruptcy Code).  To confirm the Plan, the Bankruptcy Court must find that all of the above conditions are met, unless the applicable provisions of Bankruptcy Code section 1129(b) are employed to confirm the Plan, subject to satisfying certain conditions, over the dissent or deemed rejections of Classes of Claims or Interests.

### B.  Best Interests of Creditors

Pursuant to sections 1129 of the Code a plan must provide a class of unsecured creditors more than such class would receive in a hypothetical liquidation under chapter 7 of the Bankruptcy Code.  This requirement is known as the "Best Interest of Creditors Test."  Attached hereto as Exhibit B is a liquidation analysis for the Debtor's assets (the "Liquidation Analysis").

The Debtor believes the Plan satisfies the Best Interests of Creditors Test.  As set forth in the Liquidation Analysis, under either a orderly liquidation or a forced liquidation, the value of the Secured Lenders' claims far exceed the value of their collateral.  There is no value in the Estate for holders of Unsecured Claims or Old Equity Interests.

### C.  Feasibility of the Plan

In connection with confirmation of the Plan, the Bankruptcy Court must determine that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.  The Debtor believes that the Debtor will be able to perform its obligations under the Plan without the need for further financial reorganization and are providing financial projections, attached hereto as Exhibit C.

### D.  Severability of Plans

If the Bankruptcy Court determines that any provision of the Plan would be unenforceable or would prevent the Plan from being confirmed, either on its face or as applied to any Claim or Old Equity Interest or transaction, the Debtor may modify the Plan so that such provision shall not be applicable to the holder of any Claim or Old Equity Interest or in such manner as will allow the Plan to be confirmed.  Such a determination by the Bankruptcy Court and modification by the Debtor shall not (a) limit or affect the enforceability and operative effect

of any other provision of the Plan, or (b) require the re-solicitation of any acceptance or rejection of the Plan.

### E.      Confirmation of the Plan if One or More Classes Do Not Accept

Certain provisions of the Bankruptcy Code permit confirmation of a plan of reorganization even if a class or classes do not accept the plan so long as one impaired Class votes to accept the plan.  These provisions, set forth in Bankruptcy Code section 1129(b), allow for the confirmation of the plan even though some classes vote to or are deemed to reject the plan, provided that the plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted it.

A plan is fair and equitable as to a class of secured claims that rejects a plan if the plan provides either:  (1) that the holders of claims included in the rejecting class retain the liens securing those claims, whether the property subject to those liens is retained by the Debtors or transferred to another entity, to the extent of the allowed amount of such claims; and (2) receive, on account of such claims, deferred cash payments totaling at least the allowed amount of such claims, possessing a value, as of the effective date of the plan, of at least the value of the holder's interest in the estate's interest in such property; (3) for the sale, subject to the Bankruptcy Code section 363(b), of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of the sale, and that such liens on proceeds will be treated in accordance with clause (a) of this subparagraph; or (4) for the realization by such holders of the indubitable equivalent of their claims.

A plan is fair and equitable to a class of unsecured claims that rejects or is deemed to reject the plan, if the plan provides: (1) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim, or (2) that the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property at all.

IF THE OTHER CONFIRMATION REQUIREMENTS ARE SATISFIED AT THE CONFIRMATION HEARING, THE DEBTOR WILL ASK THE BANKRUPTCY COURT TO RULE THAT THE PLAN MAY BE CONFIRMED NOTWITHSTANDING ANY VOTE OF SECURED OR UNSECURED CREDITORS TO REJECT THE PLAN ON THE GROUND THAT THE REQUIREMENTS OF SECTION 1129(B) HAVE BEEN SATISFIED.

### F.      Hearing on Confirmation of the Plan

The Bankruptcy Court will hold a hearing on _____, 20__ at _____to determine if the Plan has been accepted by a requisite number of Claims and Interests and whether the other requirements for Confirmation of the Plan have been satisfied.  Notice of the confirmation hearing date and location will be sent to all creditors and parties entitled to vote.

CREDITORS AND EQUITY INTEREST HOLDERS ARE NOT REQUIRED TO ATTEND THE HEARING ON CONFIRMATION UNLESS THEY HAVE EVIDENCE OR ARGUMENT TO PRESENT TO THE BANKRUPTCY COURT CONCERNING THE MATTERS TO BE ADDRESSED AT THE HEARING ON CONFIRMATION.

## V.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

This Disclosure Statement does not discuss any aspects of federal income taxation that may be relevant to a particular creditor in light of its personal investment circumstances or to certain creditors subject to special treatment under the federal income tax laws (for example, life insurance companies, tax-exempt organizations, foreign corporations and individuals who are not citizens or residents of the United States) and does not discuss any aspects of state, local or foreign taxation.    This Disclosure Statement also does not discuss the tax consequences to current shareholders of the Debtor and, accordingly, creditors and shareholders should consult their own tax advisors regarding their ability to recognize a loss for tax purposes and any other tax consequences to them of the Plan.

DUE TO A LACK OF DEFINITIVE JUDICIAL OR ADMINISTRATIVE AUTHORITY AND INTERPRETATION, SUBSTANTIAL UNCERTAINTIES EXIST WITH RESPECT TO VARIOUS TAX CONSEQUENCES OF THE PLAN.  FOR THE FOREGOING REASONS CREDITORS AND SHAREHOLDERS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO SPECIFIC TAX CONSEQUENCES (FEDERAL, STATE AND LOCAL) OF THE PLAN.

## VI.    EFFECTS OF PLAN CONFIRMATION

A confirmed plan leaves the holders of claims with new rights as set forth in the confirmed plan.  Therefore, in the event of a default after Confirmation, a holder of a Claim may pursue its remedies under the Plan.  Some rights may remain with holders of Claims after the provisions of the confirmed Plan have been carried out.  The automatic stay of Bankruptcy Code section 362(a) as to actions against the Debtor will remain in effect until the Effective Date of the Plan.  Thereafter, all parties in interest will be enjoined from taking any action inconsistent with the Plan.

1.    Term of Bankruptcy Injunctions or Stays; Continued Jurisdiction.    Until the Effective Date, unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case in existence on the Confirmation Date, including those under section 105 or 362 of the Bankruptcy Code, shall remain in effect, and the Bankruptcy Court shall retain custody and jurisdiction of the Debtor and its Estate.

2.    Debtor's Authority.    On and after the Effective Date, the Reorganized Debtor shall be released from the custody and jurisdiction of the Bankruptcy Court and may operate its business and may use, acquire, and dispose of property without supervision or approval by the Bankruptcy Court, except for those matters as to which the Bankruptcy Court specifically retains jurisdiction under the Plan or the Confirmation Order.  On and after the Effective Date, except as otherwise provided in the Plan, the Debtor will, as a Reorganized Debtor, continue to exist as a separate legal entity, with all the powers of a limited liability company under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable law.

3.    Continued Corporate Existence.    On the Effective Date, except as otherwise provided for in the Plan or the Confirmation Order, (i) the property of the Debtor's Estate shall

vest in the Reorganized Debtor, free and clear of all liens, Claims, Old Equity Interests, and Causes of Action against or in the Debtor or Reorganized Debtor or its property, (ii) any and all Causes of Action belonging to the Debtor or its Estate shall be preserved and shall vest in the Reorganized Debtor.

## VII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### A. Liquidation Under Chapter 7

If no chapter 11 plan can be confirmed, the Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code, in which a trustee would be elected or appointed to liquidate the assets of the Debtor. The Debtor believes that liquidation under chapter 7 would result in smaller distributions being made to Creditors than those provided for in the Plan because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals during such liquidation.

The Debtors, with the assistance of their professionals, have prepared a Liquidation Analysis, attached hereto as Exhibit B. The Liquidation Analysis is based upon a hypothetical liquidation in a chapter 7 case. The Debtor has taken into account the nature, status and underlying value of its assets, the ultimate realizable value of its assets, and the extend to which such assets are subject to the Lender's liens and security interests.

The likely form of any liquidation would be the sale of Debtor's assets. Based on this analysis, it is likely that a chapter 7 liquidation of these assets would produce less value for distribution to creditors than that recoverable under the Plan. In the opinion of the Debtor, the recoveries projected to be available in a chapter 7 liquidation are not likely to afford the holders of Claims and equity Interests as great a realization potential as does the Plan.

### B. Alternative Plan of Reorganization

If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different plan of reorganization. The Debtor believes that the Plan enables the Debtor to restructure its senior secured debt and continue the servicing of its customers in the form of the Reorganized Debtor, and allows Creditors to realize the highest recoveries under the circumstances.

## VIII. CONCLUSION AND RECOMMENDATION

The Debtor urges all Creditors entitled to vote on the Plan to vote to accept the Plan and to evidence such acceptance by immediately returning their properly completed ballots to the appropriate voting agent as set forth on the ballots within the time stated in the notice served with this Disclosure Statement.

Dated: September 28, 2010
Dallas, Texas

DLA Piper LLP (US)

By: */s/ Vincent P. Slusher*
Vincent P. Slusher
State Bar No. 00785480
vince.slusher@dlapiper.com
J. Seth Moore
State Bar No. 24027522
seth.moore@dlapiper.com

1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 743-4572
Facsimile: (972) 813-6267

Exhibit A - Plan of Reorganization

Exhibit B - Liquidation Analysis

Exhibit C - Financial Projections

Exhibit D - Contract Assumption Schedule

Exhibit E – Contract Rejection Schedule