Vincent P. Slusher
State Bar No. 00785480
vince.slusher@dlapiper.com
J. Seth Moore
State Bar No. 24027522
seth.moore@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
Telephone:   (214) 743-4572
Facsimile:    (972) 813-6267

COUNSEL FOR DEBTOR AND
DEBTOR-IN POSSESSION

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In Re:** | § | **Chapter No.:  11** |
| | § | |
| **Angaraka Limited Partnership** | § | **Case No.:  10-33868-sgj11** |
| | § | |
| **Debtor.** | § | |

## DEBTOR'S RESPONSE TO TEXAS COMPTROLLER OF PUBLIC ACCOUNTS' MOTION TO DISMISS CASE WITH PREJUDICE

The above-captioned debtor and debtor in possession ("Angaraka" or "Debtor") files this response (the "Response") to the motion of the Texas Comptroller of Public Accounts ("Comptroller" or "Movant") requesting dismissal of this case with prejudice, dated February 28, 2011 [Docket No. 105] (the "Motion").  In support of the Response, the Debtor respectfully states as follows:

## BACKGROUND

1.      On May 31, 2010 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3.      No trustee, examiner or committee of creditors has been appointed in this case.

4.      In November 2005, the Debtor, a Texas limited partnership, acquired and assumed indebtedness secured by, among other things, a Deed of Trust on four, Class B/C, garden-apartment properties (the "Properties") located in the Dallas/Fort-Worth Metroplex.  The Properties -- Woodchase, Clarendon, Keller Oaks, and Sycamore Hills -- total 750 units and range in date of construction from 1979 to 1983.   Illustrated below is a summary of each Property's key characteristics:

|  | Sycamore Hill | Keller Oaks | Clarendon | Woodchase |
|---|---|---|---|---|
| Location | Fort Worth, TX | Carrollton, TX | Irving, TX | Irving, TX |
| Number Of Units | 264 | 220 | 192 | 74 |
| Year of Construction | 1983 | 1979 | 1981 | 1983 |
| Current Occupancy | 95% | 88% | 74% | 94% |

5.      When the debtor acquired the Properties, they were encumbered with a loan in the original amount of $20,350,000.  As of January 11, 2010 the loan balance totaled $17,690,484. Illustrated below is a Property by Property break down of the loan structure[1]:

|  | Sycamore Hill | Keller Oaks | Clarendon | Woodchase |
|---|---|---|---|---|
| Original Loan Amount | $6,210,476 | $7,167,501 | $4,561,137 | $2,410,887 |
| Amortization | 360 / Balloon | 360 / Balloon | 360 / Balloon | 360 / Balloon |
| Current Interest Rate[2] | 8.90% | 8.90% | 8.90% | 8.90% |
| Maturity | 11/01/2028 | 11/01/2028 | 11/01/2028 | 11/01/2028 |
| Current Loan Balance | $5,265,059 | $6,076,397 | $3,866,799 | $2,043,879 |

[1] The allocations made hereunder are for illustrative purposes only and the Secured Creditor (defined herein) may not necessarily agree with the allocations or that the loan documents that define the relationship between the Debtor and the Secured Creditor require a release of the Secured Creditor's lien on any one property in return for payment of the amount listed by the Debtor in this chart.

[2] The Anticipated Repayment Date ("ARD") became effective November 1, 2008, triggering a 200 bps increase from 6.90% to 8.90% in the loan's effective interest rate.

6. In or around January of 2009, Buchanan Street Partners took over as Asset Manager for all of the Properties and employed Pacific West Property Management ("PWM") to serve as "on-site" Property Manager at each Property. Upon engagement, PWM completed an in-depth review of each Property. In the course of their review of the Properties, PWM discovered several problems with the Properties, including aesthetic and structural elements that had dilapidated to the point of failing to satisfy required building codes, and a lack of any rentable units due to delayed repairs or general neglect. Since January 2009, Debtor, along with their new property manager PWM, have sought to upgrade the Properties, focusing on the most pertinent items that required attention based on PWM's findings, particularly those mandatory to satisfy city code compliance issues and cure the life-safety items, as well as rehab the assets to be in revenue-generating condition.

7. At the same time, PWM also identified and sought to remedy several issues with the business management of the Properties. Specifically, PWM discovered that there was limited, if any, monitoring of account payables, the on-site management/support staff was poorly trained and required replacement, there were excessive and often unwarranted concessions being given to new tenants, and there was little to no marketing or advertising materials or activity promoting the Properties.

8. During 2009, the Debtor, with the help of PWM, had made significant progress with regards to completing some of the much needed repairs, renovations, and management reorganization of the Properties. Many of the completed repairs and renovations were required in order to satisfy city code compliance requirements and to meet basic standards of aesthetics. The Properties further risked being condemned by the city and becoming less marketable in attracting new tenants and retaining existing ones, and thus the need to complete them quickly

was imperative. However the drain on cash-flow that such efforts had required compounded the Debtor's hardship in meeting its debt service requirements. Moreover, the market for older multifamily rental units, such as the Properties, in the areas in which the Properties are located saw a significant decline in 2009 as new units were built, exacerbating the Debtor's financial situation as tenants were more difficult to come by.

9. The costs of the repairs and renovations, the economic conditions, and the required debt service payments in 2009 had a significant impact on the Debtor's net operating income. Due to the increased financial burden of the Debtor brought upon it by the necessary repairs and management changes, and the negative economic conditions, the Debtor began defaulting on its secured debt obligations. Despite Debtor's best efforts to renegotiate its obligations with its secured creditor, C-III,[3] Debtor was unable to reach terms with C-III that would allow it to operate as a profitable enterprise. Debtor therefore had no other option than to file for bankruptcy protection on the Petition Date.

10. On September 28, 2010, the Debtor filed a proposed Plan of Reorganization [Dkt. No. 65] (the "Plan") pursuant to Chapter 11 of the Bankruptcy Code. A hearing regarding the confirmation of the Plan is presently set for hearing on April 25, 2011 (the "Confirmation Hearing").

## RESPONSE

11. On February 28, 2011, the Comptroller filed the Motion seeking an order dismissing this case with prejudice on the basis that Debtor's charter with the Texas Secretary of

---

[3] The Debtor's Secured Creditor is Bank of America, National Association, successor to Norwest Bank Minnesota, National Association, as Trustee and REMIC Administrator for the Registered Certificate holders of DLJ Commercial Mortgage Corp, Commercial Mortgage Pass-Through Certificates, Series 1999-CGI, acting by and through C-III Asset Management LLC (f/k/a Centerline Servicing LLC, which was f/k/a Centerline Servicing Inc., which was f/k/a ARCap Servicing, Inc., in its capacity as special servicer pursuant to that certain Pooling and Servicing Agreement dated March 1, 1999) (or "C-III Asset Management")

State to conduct business Texas was forfeited prior to the Petition Date, and thus Debtor should not permitted to pursue its previously filed Plan in an effort to reorganize pursuant to Chapter 11 of the Bankruptcy Code. First, the Motion should be denied because dismissal is not in the best interest of the Debtor and its creditors. Second, the Debtor may, prior to the Confirmation Hearing, re-acquire its charter with the Secretary of State. Third, the Debtor may amend the Plan to comply with the requirements alleged by the Comptroller in the Motion.

A. _Dismissal Is Not In The Best Interest Of The Debtor And Creditors._

12. Bankruptcy Code Section 1112(b) requires the Bankruptcy Court to convert or dismiss a bankruptcy case "for cause" as follows:

> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that *the requested conversion or dismissal is not in the best interests of creditors and the estate*, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b) (emphasis added). In other words, regardless of whether "cause" exists, prior to dismissing or converting a case, the court must determine whether such action is in the best interest of the creditors and the debtor. If dismissal or conversion to chapter 7 is not in the best interest of the debtor and creditors, the court should deny a motion requesting it. *See* 11 U.S.C. § 1112(b).

13. The Plan, as presently drafted, outlines the Debtors specific plans for the payment of its obligations, including the tax claims of the Comptroller.[4] The dismissal of this case, however, will come at great expense to the Debtor and its creditors, as it would inevitably force the further drain of the Debtor's resources – the very resources that would otherwise be administered pursuant to the Plan for the payment of the Debtor's creditors. As the dismissal of

---

[4] *See* Plan at § 2.1(c).

this case will serve only the Comptroller – a creditor to which the Plan already provides payment of its claim – the dismissal of this case is not in the best interest of the Debtor and its creditors and therefore inappropriate pursuant to Bankruptcy Code Section 1112(b).

B.      *There Is No Cause For Dismissal Because Debtor's Charter May Be Reinstated Prior To The Confirmation Hearing.*

14.      The Debtor is permitted under Texas law to have its charter reinstated, thus nullifying the basis for the Comptroller's Motion.  The basis for the Motion, and the entire argument of the Comptroller, is that the Debtor's charter was forfeited as of the Petition Date, making the Debtor ineligible, according to the Comptroller, to seek reorganization under Chapter 11.  *See* Motion at ¶3.  Importantly, however, pursuant to the Texas Tax Code,

> A corporation whose charter or certificate of authority is forfeited under this chapter by the secretary of state is entitled to have its charter or certificate revived and to have its corporate privileges revived if:
>
> (1) the corporation files each report that is required by this chapter and that is delinquent;
>
> (2) the corporation pays the tax, penalty, and interest that is imposed by this chapter and that is due at the time the request under Section 171.313 of this code to set aside forfeiture is made; and
>
> (3) the forfeiture of the corporation's charter or certificate is set aside in a proceeding under Section 171.313 of this code.

TEXAS TAX CODE § 171.312.  In other words, if Debtor complies with the provisions of section 171.312 prior to the confirmation of its Plan,[5] its charter will be revived, and the basis for the Motion – the lack of a charter by the Debtor – will be removed.  As the Debtor may revive its charter prior to the Confirmation Hearing, the Motion is premature and should be denied.

C.      *There Is No Cause For Dismissal Because Debtor May Amend The Plan To Conform With The Alleged Requirements Set Forth In The Motion*

---

[5] In fact the Plan, as presently proposed, allows for the payment of the Debtor's tax liabilities, one of the requirements for the revival of the Debtor's charter.  *See* Plan at § 2.1(c).

15. Even if the Debtor fails to revive its charter with the Secretary of State, no cause exists for the dismissal of this case. The Debtor may amend the Plan to conform with the requirements the Comptroller alleges in the Motion the Debtor must comply with in order to pursue a Chapter 11 case. In the Motion, the Comptroller asserts that, because the Debtor's charter with the Secretary of State was revoked prior to the Petition Date, the Debtor is not permitted to seek reorganization under Chapter 11 of the Bankruptcy Code. Specifically, the Motion asserts that an entity which has lost its charter may only seek liquidation, either by Chapter 11 or Chapter 7.

16. The Debtor's proposed Plan is one of reorganization under Chapter 11. Nevertheless, the Motion should be denied because the Confirmation Hearing is still weeks away, and Debtor is presently engaged in extensive negotiations and discovery with its secured creditor relating to the Plan. The Debtor should be allowed the option of modifying the Plan to one of liquidation pursuant to Chapters 7 or 11. As the Plan is still subject to modification, and such modification could cause the Plan to conform with the requirements alleged by the Comptroller, the Motion is premature and should be denied.

## CONCLUSION

The Motion should be denied, as Movant has failed to establish that dismissal is in the best interest of the Debtor and its creditors. Moreover, no cause exists for dismissal because the Debtor may revive its charter prior to the Confirmation Hearing, or the Debtor may yet amend its Plan to one of liquidation under Chapters 7 or 11 of the Bankruptcy Code. Because dismissal is not in the best interest of the Debtor and its creditors, and the Comptroller has not established that any cause exists for the dismissal of this case, the Motion should be denied.

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that this Court deny the Motion seeking dismissal of this case, and grant the Debtor such other relief as is just and proper.

Dated: March 21, 2011

**DLA PIPER LLP (US)**

By: /s/ *J. Seth Moore*
    Vincent P. Slusher
    State Bar No. 00785480
    vincent.slusher@dlapiper.com
    J. Seth Moore
    State Bar No. 24027522
    seth.moore@dlapiper.com

    DLA Piper LLP (US)
    1717 Main Street, Suite 4600
    Dallas, Texas 75201
    Telephone: (214) 743-4572
    Facsimile: (972) 813-6267

    Counsel for the Debtor
    and Debtor in Possession

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that a true and correct copy of the foregoing document has been served on March 21, 2011 to (i) the Office of the United States Trustee; (ii) all parties requesting notice; and (iii) the Movant by email and/or ECF notification.

    /s/ *J. Seth Moore*
    J. Seth Moore