Clay M. Taylor
Texas Bar I. D. 24033261
C. Josh Osborne
Texas Bar I. D. 24065856
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:    817/332-2500
Telecopy:     817/878-9280

*Counsel for C-III Asset Management LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 10-33868-11 |
| ANGARAKA LIMITED PARTNERSHIP | § | |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

## C-III ASSET MANAGEMENT'S EMERGENCY MOTION TO CONFIRM TERMINATION OF AUTOMATIC STAY

C-III Asset Management LLC (f/k/a Centerline Servicing LLC, f/k/a ARCap Servicing, Inc., in its capacity as special servicer pursuant to that certain Pooling and Servicing Agreement dated March 1, 1999) ("C-III Asset Management") files its Emergency Motion to Confirm Termination of Automatic Stay (the "Motion"). In support of the Motion, C-III Asset Management shows the following:

1.  On May 31, 2010, Angaraka Limited Partnership ("Debtor") filed for relief under Chapter 11 of the Bankruptcy Code. Since that time, Debtor has continued to operate its business as debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2.  On June 14, 2010, Debtor filed its Motion for Interim and Final Orders Authorizing Use of Cash Collateral and Granting Related Relief (the "Cash Collateral Motion")

[Docket No. 16]. An agreed final cash collateral order was entered granting the Cash Collateral Motion on July 6, 2010 (the "Agreed Order") [Docket No. 46].

3. The Agreed Order provides that Debtor's authorization to use cash collateral will terminate upon "any violation or breach of any term of the Agreed Order by Debtor that is not cured within five (5) business days of receipt by Debtor and Debtor's counsel, of notice of such default, violation or breach (except that in the third instance of default the automatic stay shall automatically terminate)." Agreed Order, ¶ 10.

4. Since the Agreed Order was entered, Debtor has defaulted on numerous occasions and only cured these defaults several days to several weeks after it was notified of the default. Furthermore, Debtor has failed to cure at least four defaults as of the time this Motion was filed. Specifically, Debtor has defaulted on its payment, reporting and insurance maintenance obligations.

## PAYMENT DEFAULTS

5. Pursuant to the Agreed Order, Debtor was supposed to pay its net cash flow over to C-III Asset Management. Agreed Order, ¶ 12(c). Beginning in October, however, Debtor has taken anywhere between one to four months after the month's end to remit payment.

| Reporting Month | Net Cash Flow | Date(s) of Payment |
|---|---|---|
| July | $116,423.00 | 8/19 – 8/23 |
| August | $ 84,519.00 | 9/23 |
| September | $106,600.00 | 10/27 |
| October | $ 65,302.00 | 12/10 |
| November | $ 65,866.00 | 1/10 |
| December | $ 34,203.00 | **No Payment Made** |
| January | $ 79,093.00 | 4/7 |
| February | $137,829.00 | 4/4 – 4/7 |
| March | Unreported | n/a |

6. Most importantly, as shown in the table above, Debtor has not turned over $34,203.00 for December—despite C-III Asset Management's notice that Debtor is in default under the Agreed Order.[1]

7. Additionally, in keeping with Debtor's practice of habitually paying late, Debtor has not remitted payment for March.

## REPORTING DEFAULTS

8. In addition to making timely payments, each month Debtor was required to satisfy the following reporting requirements (among others) on a monthly basis: 1) provide C-III Asset Management with a budget of projected uses of cash collateral for the following month; and 2) deliver a consolidated cash flow report to C-III Asset Management providing a comparison of actual payments to the budget line items for the prior monthly period. Agreed Order, ¶ 8.

9. Debtor has not timely sent the budget for the following month one single time and, as of late, has stopped sending the budget altogether. Debtor has not cured this default even though C-III Asset Management notified Debtor several times, including on March 28, 2011, that Debtor needs to do so.

10. More importantly, Debtor has not sent C-III Asset Management the lender reports required under the Agreed Order on a timely basis. It did not receive the November report until January 20, 2011 and Debtor still has not produced the required reports for December and January despite numerous requests from C-III Asset Management's counsel, including on March 28, 2011.

---

[1] Debtor previously informed C-III Asset Management that it used December 2010 – February 2011's net proceeds to pay for ad valorem taxes because the amount owed for the taxes exceeded the amounts it had escrowed under the monthly Agreed Order budgets. Despite this assertion, cash somehow became available upon demand by C-III Asset Management to cure the January default and belatedly cure the February default. Yet, Debtor did **not** cure the very first defaulted month, December 2010.

## INSURANCE DEFAULT

11. Another term of the Agreed Order was that Debtor must have continued insurance in place and provide proof of insurance to C-III Asset Management on a go forward basis. Agreed Order, ¶ 12(d). Debtor, however, had not paid its insurance for the period October 1, 2010-October 2011. C-III Asset Management became aware of the non-payment on November 29, 2010, when it received a bill from Debtor's insurance provider. C-III Asset Management immediately notified Debtor of the default. Debtor's default was not cured until 15 days later.

## CONCLUSION

12. The litany of defaults described above are more than sufficient to trigger the provision in the Agreed Order regarding the stay automatically terminating. C-III Asset Management attempted to work with Debtor thus far, but the failure to remit payment in clear defiance of the Court's Agreed Order has put C-III Asset Management in the position where it must now require enforcement of the unambiguous terms of the Agreed Order.

## REQUEST FOR RELIEF

C-III Asset Management requests that the Court: (i) enter an Order confirming the termination of the automatic stay; (ii) to the extent Fed. R. Bankr. P. 4001(a)(3) applies, waive the 14 day stay of that relief; and (iii) grant such other and further relief to which C-III Asset Management may be entitled.

Respectfully submitted,

/s/ *Clay M. Taylor*
Clay M. Taylor
Texas Bar I. D. 24033261
clay.taylor@kellyhart.com
C. Josh Osborne
Texas Bar I. D. 24065856
c.joshosborne@kellyhart.com

Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:   817/332-2500
Telecopy:    817/878-9280

*Counsel for C-III Asset Management LLC*

## CERTIFICATE OF CONFERENCE

I hereby certify that on April 15, 2011, I conferred with Debtor's counsel regarding the relief requested in the Motion. At that time, he indicated that Debtor has taken the Motion under advisement and is consulting with counsel regarding whether it will consent to the relief requested. However, at this time, Debtor has not agreed to the relief requested and are thus deemed opposed.

/s/ Clay M. Taylor
Clay M. Taylor

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served on April 15, 2011 upon the counsel for Debtor, the Office of the United States Trustee, Debtor's 20 largest creditors, and all persons who have filed a notice of appearance and request for service of pleadings in the chapter 11 case via first class, U.S. mail, postage prepaid, e-mail, or via ECF Electronic Notice.

/s/ C. Josh Osborne
C. Josh Osborne

# ANGARAKA LIMITED PARTNERSHIP
## SERVICE LIST

U.S. Trustee
1100 Commerce Street
Room 976
Dallas, TX 75242-1496

Angaraka Limited Partnership
Buchanan Street Partners
620 Newport Center Drive, 8th Floor
Newport Beach, CA 92660

J. Seth Moore
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, TX 75201

Vincent P. Slusher
DLA Piper LLP US
1717 Main Street
Suite 4600
Dallas, TX 75201

J National Contractors, Inc.
17630 Davenport Road Ste 104
Dallas, TX 75252

Alejandro Cabrera
P.O. Box 382608
Duncanville, TX 75138

Painting by Olda, Inc.
5614 Sachse Street
Sachse, TX 75048

Javier Ramirez
2811 Cumberland Dr.
Mesquite, TX 75150-3805

HD Supply Facilities Maintenance
PO Box 509058
San Diego, CA 92150-0958

Enrique Hernandez
Hernandez Repair
1723 Peters Rd Ste 442
Irving, TX 75061-3238

All-Star Flooring, Inc.
3241 Garden Brook Drive
Farmers Branch, TX 75234

Woodland Graphic Custom Signs
P.O. Box 822702
Dallas, TX 75382

Sunbelt Pools, Inc.
10555 Plano Road
Dallas, TX 75238

Startex Power
P O Box 4802
Houston, TX 77210-4802

Wilmar Industries, Inc.
PO Box 404284
Atlanta, GA 30384-4284

Greensheet
2501 Parkview Dr, Suite 430
Fort Worth, TX 76012

Victor Manuel Litteri
403 Rosemary Lane
Euless, TX 76039

Earthworks, Inc.
PO Box 199
Lillian, TX 76061

Ana Gutierrez
P.O. Box 201542
Arlington, TX 76006

Metro Staffing LLC
PO Box 905756
Charlotte, NC 28290-5756

RV All Floors LLC
2734 Copper Valley Ct.
Houston, TX 77067

Vincente Mejia
P.O. Box 451044
Garland, TX 75045

Taurus Painting
PO Box 701002
Dallas, TX 75370-1002

Redi Carpet
PO Box 971442
Dallas TX 75397-1442